**COZEN O'CONNOR**
Valerie D. Rojas (State Bar No. 180041)
vrojas@cozen.com
601 South Figueroa Street, Suite 3700
Los Angeles, CA 90017
Telephone: (213) 892-7965
Facsimile: (213) 784-9076

**BAILEY CAVALIERI LLC**
Sabrina Haurin (admitted *pro hac vice*)
Elizabeth E. Cary (admitted *pro hac vice*)
shaurin@baileycav.com
ecary@baileycav.com
10 West Broad Street, Suite 2100
Columbus, OH 43215-3422
Telephone: (614) 221-3155
Facsimile: (614) 221-0479

Counsel for Plaintiff/Counter-Defendant
SCOTTSDALE INSURANCE COMPANY

**UNITED STATES DISTRICT COURT**

**NORTHERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| SCOTTSDALE INSURANCE COMPANY, an Ohio corporation,<br><br>Plaintiff/Counter-Defendant,<br><br>v.<br><br>REPAIRPAL, INC., a Delaware corporation, et al.,<br><br>Defendants. | Case No.: 4:25-cv-05094-JST<br><br>**SCOTTSDALE INSURANCE COMPANY'S NOTICE OF MOTION AND MOTION FOR SUMMARY JUDGMENT AGAINST DEFENDANTS**<br><br>[*Filed Concurrently with Request for Judicial Notice; Appendix of Exhibits; and Proposed Order]*<br><br>Date: October 29, 2026<br>Time: 2:00 p.m. PT<br>Court: Courtroom 6, Second Floor<br>Judge: Honorable Jon S. Tigar |

# TABLE OF CONTENTS


I. INTRODUCTION .......... 2

II. STATEMENT OF FACTS .......... 4

A. The Policy .......... 4

B. The Underlying Action .......... 6

C. The Advancement Action .......... 8

D. This Coverage Action .......... 12

III. LEGAL ARGUMENT .......... 12

A. Summary Judgment Standard .......... 12

B. Principles of Interpretation of Insurance Contracts .......... 13

C. There Is No Coverage for the Defense Costs Because Scottsdale Did Not Consent to Shelton's Use of Paul Hastings in the Underlying Action and Shelton Was Not Entitled to Independent Counsel. .......... 14

D. There Is No Coverage for the Defense Costs That RepairPal Was Ordered to Pay to Shelton by Virtue of the Contract Exclusion. .......... 17

E. There Is No Coverage for the Defense Costs That RepairPal Was Ordered to Pay to Shelton Because They Do Not Constitute Loss for a Wrongful Act. .......... 20

F. There Is No Coverage for the Defense Costs That RepairPal Was Ordered to Pay to Shelton By Virtue of the Insured v. Insured Exclusion. .......... 22

G. RepairPal Was Not Entitled to Independent Counsel in the Advancement Action. .......... 24

H. RepairPal's Cause of Action for Bad Faith Fails as a Matter of Law. .......... 24

IV. CONCLUSION .......... 25

# TABLE OF AUTHORITIES

**CASES**


*Aeroquip Corp. v. Aetna Cas. & Surety Co., Inc.*, 26 F.3d 893 (9th Cir. 1994)....14

*AIU Ins. Co. v. Super. Ct.*, 51 Cal. 3d 807 (1990)....13

*Aloha Pac., Inc. v. Cal. Ins. Guar. Assn.*, 79 Cal. App. 4th 297, 93 Cal. Rptr. 2d 148 (2000)....18

*Am. Legacy Found. v. Nat'l Union Fire Ins. Co.*, 640 F. Supp. 2d 524 (D. Del. 2009)....19

*Am. Legacy Found., RP v. Nat'l Union Fire Ins. Co.*, 623 F.3d 135, 143 (3d Cir. 2010)....19

*Am. States Ins. Co. v. Sacramento Plating Inc.*, No. 94-16905, 1996 U.S. App. LEXIS 41175 (9th Cir. Oct. 25, 1996)....23

*American States Ins. Co. v. Sacramento Plating Inc.*, No.94-16905, 1996 U.S. App. LEXIS 41175 (9th Cir. Oct. 25, 1996)....14

*August Enter., Inc. v. Philadelphia Indem. Ins. Co.*, 146 Cal. App. 4th 565, 52 Cal. Rptr. 3d 908 (2007)....21

*Aydin Corp. v. First State Ins. Co.*, 18 Cal. 4th 1183 (1998)....14

*Bank of the West v. Super. Ct.*, 2 Cal. 4th 1254 (1992)....13

*Benihana of Tokyo, Inc. v. Benihana, Inc.*, 906 A.2d 114 (Del. 2006)....19

*Biltmore Assocs., LLC v. Twin City Fire Ins. Co.*, 572 F.3d 663 (9th Cir. 2009)....22

*Brown v. Grimes*, 192 Cal. App. 4th 265, 120 Cal. Rptr. 3d 893 (2011)....15

*Carolina Cas. Ins. Co. v. Bolling, Walter & Gawthrop*, 2005 U.S. Dist. LEXIS 20485 (E.D. Cal. May 31, 2005)....14

*Centaur Partners, IV v. Natl. Intergp., Inc.*, 582 A.2d 923 (Del. 1990)....19

*Columbia Cas. Co. v. Abdou*, No. 15cv90-LAB (KSC), 2015 U.S. Dist. LEXIS 169036 (S.D. Cal. Dec. 16, 2015)....18

*Czerwinski v. Scottsdale Ins. Co.*, No. CV 17-4408 PA (MRWx), 2017 U.S. Dist. LEXIS 147727 (C.D. Cal. Sept. 11, 2017)....23

*Dynamic Concepts v. Truck Ins. Exch.*, 61 Cal. App. 4th 999, 71 Cal. Rptr. 2d 882 (1998)....16

*Faust v. The Travelers*, 55 F.3d 471 (9th Cir. 1995)....15

*FDIC v. BancInsure, Inc.*, 675 F.App'x 666 (9th Cir. 2017) ....................................23

*Gribaldo, Jacobs, Jones & Assocs. v. Agrippina Versicherunges A.G.*, 3 Cal. 3d 434, 91 Cal. Rptr. 6, 476 P.2d 406 (1970) ....................................15

*Guz v. Bechtel Nat'l, Inc.*, 24 Cal. 4th 317, 100 Cal. Rptr. 2d 352 (2000) ....................................25

*Hawker v. Doak*, 685 F.App'x 565 (9th Cir. 2017) ....................................23

*Health Net, Inc. v. RLI Ins. Co.*, 206 Cal. App. 4th 232, 141 Cal. Rptr. 3d 649 (2012) ....................................21

*Insua v. Scottsdale Ins. Co.*, 104 Cal. App. 4th 737, 129 Cal. Rptr. 2d 138 (2002) ....................................15

*James River Ins. Co. v. Medolac Labs.*, 290 F. Supp. 3d 956 (C.D. Cal. 2018) ....................................18

*Jamestown Builders, Inc. v. Gen. Star Indem. Co.*, 77 Cal. App. 4th 341, 91 Cal. Rptr. 2d 514 (1999) ....................................15

*Jana Master Fund, Ltd. V. CNET Networks, Inc.*, 954 A.2d 335 (Del. Ch. 2008) ....................................19

*La Jolla Beach & Tennis Club, Inc. v. Indus. Indem. Co.*, 9 Cal. 4th 27 (1994) ....................................13

*Landmark Am. Ins. Co. v. Navigators Ins. Co.*, 354 F. Supp. 3d 1078 (N.D. Cal. 2018) ....................................18

*Landmark Am. Ins. Co. v. Taisei Constr. Corp.*, No. CV 16-9169 FMO (PJWx), 2022 U.S. Dist. LEXIS 181042 (C.D. Cal. Sept. 30, 2022) ....................................15

*Lee v. Fisher*, 70 F. 4th 1129 (9th Cir. 2023) ....................................19

*Lee v. Nat'l Union Fire. Ins. Co.*, No. CV 14-2396-GHK (MRWx), 2014 U.S. Dist. LEXIS 194904 (C.D. Cal. Jul 9, 2014) ....................................22

*Love v. Fire Ins. Exch.*, 221 Cal. App. 3d 1136, 271 Cal. Rptr. 246 (1990) ....................................25

*Manzarek v. St. Paul Fire & Marine Ins. Co.*, 519 F.3d 1025 (9th Cir. 2008) ....................................13

*Matshushita Elec. Indus. v. Zenith Radio Corp.*, 475 U.S. 574, 106 S. Ct. 1348 (1986) ....................................13

*McGee v. Superior Ct.*, 176 Cal. App. 3d 221, 221 Cal. Rptr. 421 (1985) ....................................16

*McKee v. State Farm Fire & Cas. Co.*, 145 Cal. App. 3d 722 (1983) ....................................14

*Mt. Hawley Ins. Co. v. McAtamney*, No. 23-cv-01335-JST, 2024 U.S. Dist. LEXIS 497 (N.D. Cal. Jan. 2, 2024) ........ 18

*Nat'l Bank of Ca. v. Progressive Cas. Ins. Co.*, 938 F. Supp. 2d 919 (C.D. Cal. 2013) ........ 18

*Native Sun Inv. Gp. v. Ticor Title Co.*, 189 Cal. App. 3d 1265, 235 Cal. Rptr. 34 (1987) ........ 16, 24

*Oak Park Calabasas Condo. Ass'n v. State Farm Fire & Cas. Co.*, 137 Cal. App. 4th 557, 40 Cal. Rptr. 3d 263 (2006) ........ 21

*Office Depot, Inc. v. AIG Speciality Ins. Co.,* 829 Fed. Appx. 263 (9th Cir. 2020) ........ 19

*Perez v. Health*, No. 15-cv-01792, HSG, 2016 U.S. Dist. LEXIS 82024 (N.D. Cal. Jun. 23, 2016) ........ 13

*RLI Ins. Co. v. Greater Los Angeles Zoo Ass'n*, No. CV 25-2701-DMG (MAAx), 2025 U.S. Dist. LEXIS 275730 (C.D. Cal. Nov. 14, 2025) ........ 18

*Scottsdale Ins. Co. v. Beachcomber Mgmt. Crystal Cove, LLC*, No. 8:22-cv-01300-JWH-KES, 2025 U.S. Dist. LEXIS 10403 (C.D. Cal. Jan. 21, 2025) ........ 18

*Screen Actors Guild Inc. v. Fed. Ins. Co.*, 2013 U.S. Dist. LEXIS 100638 (C.D. Cal. Jul. 11, 2013) ........ 21

*Silicon Valley Bank v. N.H. Ins. Co.*, 203 F. Supp. 2d 1152 (C.D. Cal. 2002) ........ 13

*Stifel Fin. Corp. v. Cochran*, 809 A.2d 555 (Del. 2002) ........ 19

*Taisei*, 2022 U.S. Dist. LEXIS 181042 ........ 15

*Travelers Cas. Ins. Co. of Am. v. Mesriani & Assocs.*, No. CV-14-7898, 2015 U.S. Dist. LEXIS 194247 (C.D. Cal. Apr. 1, 2015) ........ 25

*Travelers Prop. Cas. Co. of Am. v. Centex Homes*, 2011 U.S. Dist. LEXIS 36128 (N.D. Cal. Apr. 1, 2011) ........ 14

*U.S. v. Castro-Juarez*, 654 Fed. Appx. 364 (9th Cir. 2016) ........ 13

*Vierramoore, Inc. v. Cont'l Cas. Co.*, 940 F. Supp. 2d 1270 (E.D. Cal. 2013) ........ 14

*Walis v. Fernandez*, No. 2:16-cv-00467-RGK-JEM, 2024 U.S. Dist. LEXIS 119288 (C.D. Cal. Jan. 5, 2024) ........ 15

*Waller v. Truck Ins. Exch., Inc.*, 11 Cal. 4th 1 (1995) ........ 13, 25

**STATUTES**

18 U.S.C. § 1343 ........ 7

18 U.S.C. § 1344(2) ....................7
18 U.S.C. § 2 ....................7
18 U.S.C. § 982(a)(2) ....................7
26 U.S.C. § 7201 ....................7

## NOTICE OF MOTION

TO ALL PARTIES AND ATTORNEYS OF RECORD: PLEASE TAKE NOTICE THAT on October 29, 2026 at 2:00 p.m. or as soon thereafter as the matter be heard before the Honorable Jon S. Tigar via Webinar, Plaintiff/Counter-Defendant Scottsdale Insurance Company ("Scottsdale") will and hereby does move this Court for summary judgment pursuant to Rule 56(b) of the Federal Rules of Civil Procedure.

Scottsdale seeks summary judgment in its favor on all of the causes of action in its Complaint and all of the causes of action against it in RepairPal's Counterclaim.

## STATEMENT OF ISSUES TO BE DECIDED

Scottsdale requests an order of summary judgment on the following issues as a matter of undisputed fact and law:

Issue 1: Scottsdale is not responsible for paying to Defendant Aubrey Jackson Shelton II ("Shelton") or Defendant/Counter-Claimant RepairPal, Inc. ("RepairPal") any fees and expenses incurred by Shelton in defense of the indictment (the "Defense Costs") filed against Shelton on August 15, 2023 by the United States of America, No. 3:23-cr-00258-JSC, in the United States District Court for the Northern District of California (the "Underlying Action") because Scottsdale did not consent to Shelton's use of Paul Hastings LLP ("Paul Hastings") to represent him in the Underlying Action, and Shelton was not entitled to independent counsel in the Underlying Action.

Issue 2: Scottsdale is not responsible for reimbursing RepairPal for the portion of the Defense Costs RepairPal was ordered to pay to Shelton in the lawsuit that Shelton filed against RepairPal on February 29, 2024, No. 2024-0197-KSJM, in the Delaware Court of Chancery (the "Advancement Action") by virtue of the "Contract Exclusion" contained in the Business and Management Indemnity Policy No. EKS3468389 issued by Scottsdale to RepairPal effective for the period from March 1, 2023 to March 1, 2024 (the "Policy").

Issue 3: Scottsdale is not responsible for reimbursing RepairPal for the portion of the Defense Costs RepairPal was ordered to pay to Shelton in the Advancement Action

because they do not constitute "Loss" for a "Wrongful Act" under California law.

Issue 4: Scottsdale is not responsible for reimbursing RepairPal for the portion of the Defense Costs RepairPal was ordered to pay to Shelton in the Advancement Action by virtue of the "Insured v. Insured Exclusion" contained in the Policy.

Issue 4: RepairPal was not entitled to independent counsel in the Advancement Action.

Issue 5: RepairPal's cause of action against Scottsdale for bad faith fails as a matter of law because there is no coverage for the Defense Costs under the Policy.

## I. INTRODUCTION

Scottsdale is entitled to summary judgment in its favor on its Complaint against Defendants and on RepairPal's Counterclaim because there is no coverage for the Defense Costs under the Policy.

This is not a case where an insurer has refused to defend a "Claim" against its insureds. Scottsdale recognized and offered a full defense to Shelton under its duty-to-defend Policy for the Underlying Action – which he rejected – and Scottsdale provided a full defense to RepairPal for the Advancement Action – which it accepted. Nonetheless, RepairPal seeks to have Scottsdale pay for the Defense Costs that were incurred without Scottsdale's consent in express contravention of the Policy's "No Voluntary Payment (NVP) Provision," which states that Scottsdale is not responsible for paying any defense costs incurred without Scottsdale's consent. The Policy's "NVP Provision" applies to ***all*** of the Insuring Agreements contained in the Directors & Officers and Company ("D&O") Coverage Section of the Policy and regardless of which Insured failed to obtain Scottsdale's consent prior to incurring the expenses. Ultimately, RepairPal seeks to have Scottsdale pay $6.4 million in Defense Costs it was ordered to pay to Shelton in the Advancement Action due to its intentional failure to recognize its voluntarily-undertaken obligation to indemnify Shelton pursuant to a contract, which could have been avoided had RepairPal indemnified Shelton from the outset. That is not what D&O insurance is designed to insure, and the Court should not countenance such

a result.

There is no coverage for the Defense Costs for at least four reasons. First, there is no coverage for any of the Defense Costs incurred by Shelton because they were incurred without Scottsdale's prior written consent in violation of the express terms of the Policy's "NVP Provision," which states that Scottsdale is not liable for any "Costs, Charges and Expenses" to which it has not consented. Scottsdale offered to appoint defense counsel for Shelton in the Underlying Action and he rejected that defense. As a result, there is no coverage for any of the Defense Costs. RepairPal cannot convert Shelton's uncovered Defense Costs into a covered Loss under the Policy by virtue of its obligations under the indemnification agreement it entered into with Shelton or its liability in the Advancement Action.

Second, Scottsdale is not obligated to pay RepairPal for the portion of the Defense Costs that it was ordered to pay to Shelton because the Advancement Action arose out of, directly or indirectly resulted from, or in any way involved a breach of contract and, therefore, is excluded under the Policy's "Contract Exclusion." The Advancement Action alleged causes of action for breaches of an indemnification agreement between RepairPal and Shelton and of RepairPal's bylaws, both of which are contracts, and alleged no other tort theories.

Third, even in the absence of the "Contract Exclusion," there is still no coverage for the Defense Costs that RepairPal was ordered to pay to Shelton in the Advancement Action because, in California, "Claims" to satisfy a contractual obligation are not for "Loss" resulting from a "Wrongful Act." California courts recognize an insured's liability to perform a contractual term is an obligation the insured voluntarily accepted and, therefore, is not a "Loss" resulting from a "Claim" for a "Wrongful Act" within the definitions of a D&O Policy.

Fourth, there is no coverage for the Defense Costs that RepairPal was ordered to pay to Shelton because the Advancement Action was brought by Shelton, an Insured under the Policy, against RepairPal, also an Insured, and, therefore, is precluded from

coverage by the Policy's "Insured v. Insured Exclusion."

Finally, because there is no coverage for the Defense Costs under the Policy, RepairPal's cause of action for bad faith fails as a matter of law.

For these reasons and as further explained below, Scottsdale respectfully requests that the Court grant summary judgment in its favor on Scottsdale's Complaint and RepairPal's Counterclaim.

## II. STATEMENT OF FACTS

### A. The Policy

Subject to its terms, conditions, limitations, exclusions, and endorsements, the Policy contains an Employment Practices Coverage Section and a D&O Coverage Section. (Miano Depo. at 90:1-13; Depo. Ex. 26 at Declarations, Item 3.) The D&O Coverage Section has the following Insuring Clauses:

- Insuring Clause A(1): Scottsdale shall pay the "Loss" of the "Directors and Officers" for which the "Directors and Officers" are not indemnified by the "Company" and which the "Directors and Officers" have become legally obligated to pay by reason of a "Claim" first made against the "Directors and Officers" during the "Policy Period" . . . for any "Wrongful Act" taking place prior to the end of the "Policy Period."

- Insuring Clause A(2): Scottsdale shall pay the "Loss" of the "Company" for which the "Company" has indemnified the "Directors and Officers" and which the "Directors and Officers" have become legally obligated to pay by reason of a "Claim" first made against the "Directors and Officers" during the "Policy Period" . . . for any "Wrongful Act" taking place prior to the end of the "Policy Period."

- Insuring Clause A(3): Scottsdale shall pay the "Loss" of the "Company" which the "Company" becomes legally obligated to pay by reason of a "Claim" first made against the "Company" during the "Policy Period" . . . for any "Wrongful Act" taking place prior to the end of the "Policy Period."

(Depo. Ex. 26 at D&O Coverage Section § A.)

"Directors and Officers" is defined, in relevant part, as any person who was, now is, or shall become a duly elected or appointed director, officer, or similar executive of the "Company," or a full-time or part-time employee of the "Company." (*Id.* at D&O Coverage Section § B(4), as amended by Endorsements No. 25, 32, and 40.) "Claim" is defined, in relevant part, as "a civil proceeding against any 'Insured' seeking monetary damages or non-monetary or injunctive relief, commenced by the service of a complaint or similar pleading" and "a criminal proceeding against any 'Insured' commenced by the return of an indictment or similar document, or receipt of filing of a notice of charges," among other things. (*Id.* at D&O Coverage Section § B(1)(c) and (d), as amended by Endorsements No. 4, 30, and 34.) "Insured" is defined as the "Company" (i.e., RepairPal) and the Directors and Officers. (*Id.* at D&O Coverage Section § B(5); General Terms & Conditions § B(2); Declarations, Item 1.)

"Loss" is defined, in relevant part, as damages, judgments, settlements, pre-judgment or post-judgment interest awarded by a court, and "Costs, Charges and Expenses" incurred by Directors and Officers under Insuring Clauses A(1) or A(2) or the Company under Insuring Clause A(3), but does not include "taxes, fines or penalties" or "matters uninsurable under the laws pursuant to which this Policy is construed," among other exceptions. (*Id.* at D&O Coverage Section § B(7), as amended by Endorsement No. 7.) "Costs, Charges and Expenses" is defined, in relevant part, as "reasonable and necessary legal costs, charges, fees and expenses incurred by any of the Insureds in defending Claims . . . ." (*Id.* at D&O Coverage Section §B(9).) "Wrongful Act" is defined, in relevant part, as "any actual or alleged error, omission, misleading statement, misstatement, neglect, breach of duty or act allegedly committed or attempted by . . . any of the Directors and Officers, while acting in their capacity as such, or any other matter claimed against any Director and Officer solely by reason or his or her serving in such capacity . . . or the Company, but only with respect to Insuring Clause [A(3)] of this Coverage Section." (*Id.* at D&O Coverage Section § B(9)(a) and (c).)

The Policy states that Scottsdale "shall not be liable for Loss [under Insuring Clause A(3)] on account of any Claim . . . alleging, based upon, arising out of, attributable to, directly or indirectly resulting from, in consequence of, or in any way involving the actual or alleged breach of any contract or agreement; except and to the extent the Company would have been liable in the absence of such contract or agreement" (the "Contract Exclusion"). (*Id.* at D&O Coverage Section § C(2)(a).) The Policy states that Scottsdale "shall not be liable for Loss under [the D&O Coverage Section] on account of any Claim brought or maintained by, on behalf of, in the right of, or at the direction of any Insured in any capacity . . . whether or not collusive, unless such Claim . . . is brought or maintained by any Insured in the form of a cross-claim, third-party claim or other proceeding for contribution or indemnity which is part of, and directly results from a Claim that is covered by [the D&O Coverage Section]," among other exceptions (the "Insured v. Insured Exclusion"). (*Id.* at D&O Coverage Section § C(1)(e)(ii).)

The Policy states that it shall be the duty of Scottsdale and not the duty of the Insureds to defend any Claim. (*Id.* at D&O Coverage Section § F(1).) The Policy further states: "The Insureds agree not to settle or offer to settle any Claim, incur any Costs, Charges and Expenses or otherwise assume any contractual obligation to admit any liability with respect to any Claim without the prior written consent of [Scottsdale], such consent not to be unreasonably withheld. [Scottsdale] shall not be liable for any settlement, Costs, Charges and Expenses, assumed obligation or admission to which it has not consented" (the "NVP Provision"). (*Id.* at D&O Coverage Section § F(3).)

**B. The Underlying Action**

In the Underlying Action, the Government alleged that Shelton engaged in a scheme to defraud RepairPal by diverting money from RepairPal's bank accounts for his own personal use. (Shaw Depo. at 55:17-56:10; 59:1-5; Depo. Ex. 54 ¶¶ 6-7.) The Government asserted that Shelton inflated his salary and bonus by representing that he was entitled to receive "executive loans" and "reimbursements" that he did not actually

incur, provided false payroll documentation in furtherance of the scheme, and failed to disclose to RepairPal that he had improperly transferred money from RepairPal's bank accounts to his personal accounts. (Depo. Ex. 54 ¶ 7.) The Government asserted the following causes of action against Shelton: (1) bank fraud and aiding and abetting in violation of 18 U.S.C. § 1344(2) & 2 (Counts 1-3); (2) wire fraud and aiding and abetting in violation of 18 U.S.C. § 1343 (Counts 4-8); (3) tax evasion in violation of 26 U.S.C. § 7201 (Counts 9-12); and (4) forfeiture in violation of 18 U.S.C. § 982(a)(2). (*Id.* at 1.)

After Shelton's personal counsel at Paul Hastings tendered the Indictment to Scottsdale for coverage under the Policy, Scottsdale immediately agreed to defend Shelton in the Underlying Action and appointed former AUSA Theresa Kristovich of the law firm of Kabat Chapman & Ozmer ("Kabat") to defend Shelton. (Little Depo. at 28:4-23; Depo. Ex. 2 at 5.) At that time, Scottsdale reserved its rights solely with respect to the following issues: (1) whether the Underlying Action arose out of the same Wrongful Act or Interrelated Wrongful Acts as a Claim made prior to the Policy Period; and (2) whether the amounts sought in the Underlying Action constituted Loss. (Depo. Ex. 2 at 3-4.) In addition, Scottsdale noted that the Claim was subject to the Policy's Limit of Liability, and indicated that Scottsdale was not responsible for Costs, Charges and Expenses incurred without its consent. (*Id.* at 4-5.) Scottsdale expressly waived its right to control a settlement or plea resolution of the Underlying Action. (*Id.* at 5, n. 3.) The October 2, 2023 letter did not contain a general reservation of rights. (*Id.*)

Around that same time, Scottsdale informed RepairPal that Shelton had sought coverage for the Underlying Action under the Policy and requested various information from RepairPal. (Shaw Depo. at 41:18-42:19; Depo. Ex. 53 at 1-2.) RepairPal's retail insurance broker, Newfront Insurance Services ("Newfront"), informed Scottsdale that "RepairPal is not indemnifying Shelton [for the Defense Costs] given the circumstances of the alleged wrongdoing [in the Underlying Action]," and provided Scottsdale with some, but not all, of the information requested by Scottsdale. (Depo. Ex. 53 at 1.)

On October 6, 2023, Shelton's personal counsel sent a letter to counsel for Scottsdale disputing Scottsdale's entitlement to appoint counsel to defend Shelton in the Underlying Action. (Little Depo. at 46:10-47:11 Depo. Ex. 3.) In the letter, Shelton's counsel stated: "Mr. Shelton requests that Scottsdale accept his appointment of Paul Hastings as counsel and cover Paul Hastings' fees as they defend him in the criminal case." (Depo. Ex. 3 at 3.) On October 13, 2023, counsel for Scottsdale sent a letter to Shelton's counsel again stating that it was appointing Ms. Kristovich to defend Shelton pursuant to Scottsdale's duty to defend under the Policy, and explaining that there was no actual conflict of interest that entitled Shelton to independent counsel. (Little Depo. at 56:20-57:20; Depo. Ex. 5.) Specifically, Scottsdale noted that it did not reserve rights in the October 2, 2023 letter with respect to the Policy's "Dishonesty/Fraud Exclusion," which entitles Scottsdale to recoup from Shelton Costs, Charges and Expenses should a final adjudication be entered in the Underlying Action finding that Shelton acted fraudulently and/or dishonestly. (Depo. Ex. 5 at 1.) And Scottsdale indicated: "For the avoidance of doubt, this letter confirms that Scottsdale is not reserving its rights under the Dishonesty/Fraud Exclusion and Scottsdale will not assert that exclusion as a coverage defense in the event there is a conviction of Mr. Shelton." (*Id.*) The October 6, 2023 letter did not contain a general reservation of rights. (*Id.*)

Shelton continuously refused to use Ms. Kristovich to defend him in the Underlying Action and, instead, used Paul Hastings without Scottsdale's consent, incurring over $7 million in Defense Costs. (Soskin Decl., ECF No. 38-3, ¶¶ 6-8.) Scottsdale never consented, in writing or otherwise, to Shelton incurring any Costs, Charges and Expenses by any law firm or company other than Kabat in connection with the Underlying Action. (*Id.* ¶ 9.)

**C. The Advancement Action**

On November 3, 2023, Shelton's counsel sent a letter to RepairPal requesting that RepairPal indemnify Shelton for the Defense Costs under RepairPal's Bylaws and a February 24, 2020 Indemnification Agreement entered into between RepairPal and

Shelton. (Shaw Depo. at 77:8-78:24; Depo. Ex. 56 at 1.) The Bylaws stated that RepairPal "shall, to the maximum extent and in the manner permitted by the General Corporation Law of Delaware, indemnify each of its directors and officers against expenses (including attorneys' fees), judgments, fines, settlements and other amounts actually and reasonably incurred in connection with any proceeding, arising by reason of the fact that such person is or was an agent of the corporation." (Shaw Depo. at 18:11-20; 24:10-11; Depo. Ex. 50 § 6.1.) The Bylaws also stated that RepairPal "shall have the power, to the maximum extent and in the manner permitted by the General Corporation Law of Delaware, indemnify each of its employees and agents (other than directors and officers) against expenses (including attorneys' fees), judgments, fines, settlements and other amounts actually and reasonably incurred in connection with any proceeding, arising by reason of the fact that such person is or was an agent of the corporation." (Depo. Ex. 50 § 6.2.) The Indemnification Agreement stated: "Notwithstanding any other provision of this Agreement, [RepairPal] hereby agrees to indemnify [Shelton] to the fullest extent permitted by law, ***notwithstanding that such indemnification is not specifically authorized by*** the other provisions of this Agreement, [RepairPal's] Certificate of Incorporation, ***[RepairPal's] Bylaws or by statute***." (Shaw Depo. at 34:14-35:16; Depo. Ex. 52 § 3(a)) (emphasis added).

After RepairPal refused to indemnify Shelton for the Defense Costs demanded in the November 3, 2023 letter (*see* Shaw Depo. at 90:21-91:22; 96:10-11; 115:22-23; Smits Decl. Ex. F; Depo. Ex. 57 at 2; Depo. Ex. 61 at 4), Shelton filed the Advancement Action on February 29, 2024 alleging that RepairPal's "refusal to advance [the Defense Costs] is a repudiation and breach of its obligations to Shelton under the Bylaws and Delaware law" and "under the Indemnification Agreement and Delaware law," and seeking to recover the attorneys' fees and expenses incurred by Shelton in the Advancement Action (the "Fees-on-Fees"). (Shaw Depo. at 115:24-116:17; 118:7-10; Depo. Ex. 62 ¶¶ 35, 40, 43.) On March 1, 2024, RepairPal tendered the Advancement Action to Scottsdale for coverage under the Policy. (Miano Depo. at 121:14-16; Depo.

Ex. 28 at 2-3.) RepairPal asked Scottsdale to have the law firm of Fenwick & West LLP ("Fenwick") represent it in the Advancement Action. (Depo. Ex. 28 at 2.) Pursuant to its right and duty to defend under the Policy, Scottsdale did not consent to RepairPal using Fenwick in the Advancement Action, and Scottsdale appointed the law firm of Kennedys Law LLP ("Kennedys") to defend RepairPal in the Advancement Action. (*Id.* at 1.)

On May 9, 2024, Kennedys sent an email to Scottsdale informing Scottsdale that summary judgment motions had been filed and that oral argument was set for May 13, 2024. (Miano Depo. at 136:13-137:4; Depo. Ex. 29 at 2.) In that email, Kennedys indicated that RepairPal had made an offer to Shelton to settle the Advancement Action for 24% of the Defense Costs. (Depo. Ex. 29 at 2.) RepairPal had not sought Scottsdale's prior consent to make that settlement offer. (8/4/26 Soskin Decl. ¶ 7, Ex. E.) Kennedys also stated that "it would be reasonable to reach out to plaintiff's counsel in a good faith effort to resolve," recommended increasing the settlement offer from 24% to 34%, and asked if Scottsdale "agree[d] with the proposed plan." (Depo. Ex. 29 at 2-3.) In response, Scottsdale stated: "I'm ok with the plan, but its really up to repairpal what they want to offer or pay." (*Id.* at 1.) Kennedys responded: "Just to clarify – will the advancement be paid under the policy?" to which Scottsdale replied: "It will not. NO coverage for actual advancement." (*Id.*) That same day, Kennedys informed RepairPal that Scottsdale was taking the position that there would be no coverage for RepairPal under the Policy for the Defense Costs. (Shaw Depo. at 129:4-130:16; 132:35-133:3; *see also* Depo. Ex. 64 at 1.)

On May 13, 2024, after hearing argument of the parties, the court in the Advancement Action ruled from the bench as follows:

> I'm granting summary judgment in favor of the plaintiff as to certain of the claims at issue in the indictment. He is granted advancement for everything but the tax evasion counts. That's Counts Nine through Twelve, I believe. And he is granted fees on fees for two-thirds of the fees incurred in connection with this litigation. . . .

> ***But to the extent some reasoning is warranted here, I view the indemnification agreement issue to be very broad.*** It ties corporate capacity to an agency relationship, not just officer and director. And as I read Section 13(b) of the agreement, by its plain language, the agreement is retroactive to uncover events that occurred before the effective date of the agreement.
>
> That's slightly unusual language, but you could imagine good reasons for it. And in all events, it's the plain language here.
>
> ***So regardless of what the bylaws say, the plaintiff is entitled to advancement*** for events that occurred prior to the effective time of the indemnification agreement so long as the actions were taken by reason of the fact that he was acting as an agent of the company. . . .

(Shaw Depo. at 139:6-9; Depo. Ex. 65 at 48:12-49:17 and 50:7-10) (emphasis added.)

On May 21, 2024, counsel for Scottsdale sent a letter to RepairPal stating that "very little, if any coverage appears to be available for the Advancement Action under the Policy." (Little Depo. at 107:8-108:9; Depo. Ex. 12 at 3.) In the letter, Scottsdale reserved its right to deny coverage for the Advancement Action based on the Insured v. Insured Exclusion and for any amounts that do not fall within the Policy's definition of Loss. (Depo. Ex. 12 at 3-5.) Scottsdale also indicated that "[n]o coverage is available under the Policy for any breach of the Indemnification Agreement or any other contract or agreement" pursuant to the Contract Exclusion and under California law, which holds that, even in the absence of a contract exclusion, a claim alleging breach of contract is not covered under a professional liability policy because there is no Loss for a Wrongful Act. (*Id.* at 4-5.) Scottsdale reaffirmed its appointment of Kennedys to represent RepairPal in the Advancement Action and reminded RepairPal that "[n]o coverage is available under the terms of the Policy (or by operation of law) for any legal fees or expenses incurred by such counsel or any other firms retained by Shelton or RepairPal without Scottsdale's consent." (*Id.* at 5-6, n. 3.)

On June 3, 2024, the court entered an Order directing RepairPal to advance to Shelton the attorneys' fees and expenses that Shelton had incurred and would incur with respect to Counts 1-8 and pre-judgment interest,[1] plus two-thirds of the requested Fees-on-Fees (the "Advancement Order"). (Little Depo. at 105:6-106:3; Depo. Ex. 11 ¶ 1.) After the Advancement Order was entered, RepairPal paid Shelton two-thirds of the Defense Costs that Shelton had incurred and continued to pay two-thirds of the Defense Costs incurred by Shelton in the Underlying Action until it concluded,[2] which, according to RepairPal, ultimately totaled approximately $6.4 million. (Shaw Depo. at 168:12-169:6; Soskin Depo. at 197:3-16; Depo. Ex. 46 at 1.)

**D. This Coverage Action**

On June 16, 2025, Scottsdale filed this coverage action against Shelton and RepairPal asserting causes of action for declaratory judgment (seeking a declaration that Scottsdale is not obligated to pay for any of the Defense Costs) and for breach of contract due to Shelton's breaches of the NVP Provision contained in the Policy. (Compl., ECF No. 1-0 ¶¶ 35-43.) On August 20, 2025, RepairPal filed a Counterclaim alleging that Scottsdale breached the Policy by not providing Shelton with independent counsel in the Underlying Action, not providing RepairPal with independent counsel in the Advancement Action, and not indemnifying RepairPal for the Defense Costs. (Countercl., ECF No. 18, ¶ 66.) RepairPal also seeks a declaration that there is coverage for the Defense Costs under the Policy and alleges that Scottsdale breached the implied covenant of good faith. (*Id.* ¶¶ 70-81.)

## III. <u>LEGAL ARGUMENT</u>

**A. Summary Judgment Standard**

---

[1] The attorneys' fees and costs incurred by Shelton in defense of Counts 1-8 in the Underlying Action equaled approximately two-thirds of the entire amount of Defense Costs.

[2] In March 2025, the Underlying Action resulted in a mistrial and, in May 2025, the Government (at RepairPal's request) determined not to proceed with a new trial due to the entry of the Advancement Order requiring RepairPal to pay for two-thirds of the Defense Costs. (Shaw Depo. at 169:12-24; Depo. Ex. 46 at 3-4.)

Summary judgment is appropriate when there is no genuine issue as to a material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c); *Perez v. Health*, No. 15-cv-01792, HSG, 2016 U.S. Dist. LEXIS 82024, at *8 (N.D. Cal. Jun. 23, 2016). Under Rule 56, the moving party has the initial burden to prove that no genuine issue of material fact exists. *Matshushita Elec. Indus. v. Zenith Radio Corp.*, 475 U.S. 574, 580, 106 S. Ct. 1348 (1986). Once the moving party has carried its burden, the non-moving party must then show that there are genuine factual issues or that the moving party is not entitled to judgment in its favor as a matter of law. *See Perez*, 2016 U.S. Dist. LEXIS 82024, at *8. The non-moving party cannot rely upon conclusory allegations unsupported by factual evidence to create an issue of material fact. *U.S. v. Castro-Juarez*, 654 Fed. Appx. 364, 366 (9th Cir. 2016).

**B. Principles of Interpretation of Insurance Contracts**

"Insurance contracts are governed by the ordinary rules of contract interpretation. *La Jolla Beach & Tennis Club, Inc. v. Indus. Indem. Co.*, 9 Cal. 4th 27, 37 (1994). An insurance policy is interpreted, like all contracts, to effectuate the mutual intent of the parties. *Silicon Valley Bank v. N.H. Ins. Co.*, 203 F. Supp. 2d 1152, 1156 (C.D. Cal. 2002) (citing Cal. Civ. Code § 1636). "If contractual language is clear and explicit, it governs." *Bank of the West v. Super. Ct.*, 2 Cal. 4th 1254, 1264 (1992). The interpretation of an insurance policy is a question of law, determined, if possible, solely from the terms of the policy and their clear and explicit meaning, understood in their ordinary and popular sense. *Waller v. Truck Ins. Exch., Inc.*, 11 Cal. 4th 1, 18 (1995). The intent of the parties is to be determined from the plain meaning of the policy's written provisions, construed within the context of the entire contract. *AIU Ins. Co. v. Super. Ct.*, 51 Cal. 3d 807, 821 (1990); Cal. Civ. Code §§ 1636-1639, 1641. The insured bears the burden of establishing coverage under an insurance policy. *See, e.g., Manzarek v. St. Paul Fire & Marine Ins. Co.*, 519 F.3d 1025, 1032 (9th Cir. 2008); *Aydin Corp. v. First State Ins. Co.*, 18 Cal. 4th 1183, 1192 (1998). When an insurer seeks to enforce a policy exclusion, the words in the exclusion "must be read in their 'plain and ordinary sense,' and

ambiguity cannot be based on a strained rather than reasonable interpretation of the policy's terms." *Vierramoore, Inc. v. Cont'l Cas. Co.*, 940 F. Supp. 2d 1270, 1279 (E.D. Cal. 2013) (quoting *McKee v. State Farm Fire & Cas. Co.*, 145 Cal. App. 3d 722, 776 (1983). "The insured has the burden of proving a claim is covered under an exception to an exclusion." *American States Ins. Co. v. Sacramento Plating Inc.*, No.94-16905, 1996 U.S. App. LEXIS 41175, at *6 (9th Cir. Oct. 25, 1996) (citing *Aeroquip Corp. v. Aetna Cas. & Surety Co., Inc.*, 26 F.3d 893, 894-95 (9th Cir. 1994)).

When a policy grants an insurer the right and duty to defend, the insurer has the right to appoint counsel to represent the insured's interests in connection with a potentially covered claim. *See Carolina Cas. Ins. Co. v. Bolling, Walter & Gawthrop*, 2005 U.S. Dist. LEXIS 20485, at *23 (E.D. Cal. May 31, 2005) (recognizing that an insurer has the right to select defense counsel and control the defense of its insured under a duty to defend policy); *Travelers Prop. Cas. Co. of Am. v. Centex Homes*, 2011 U.S. Dist. LEXIS 36128, at *17 (N.D. Cal. Apr. 1, 2011) ("The right to control the defense generally includes the right to select defense counsel.").

**C. There Is No Coverage for the Defense Costs Because Scottsdale Did Not Consent to Shelton's Use of Paul Hastings in the Underlying Action and Shelton Was Not Entitled to Independent Counsel.**

There is no coverage for any of the Defense Costs because they were incurred without Scottsdale's consent in violation of the express terms of the Policy's NVP Provision, which states that the Insureds agree not to incur any Costs, Charges and Expenses without the prior written consent of Scottsdale, and that Scottsdale shall not be liable for any Costs, Charges and Expenses to which it has not consented. (Depo. Ex. 26 at D&O Coverage Section § F(3).) This provision was breached when Shelton refused to use Ms. Kristovich to defend him in the Underlying Action and, instead, incurred millions of dollars in Costs, Charges and Expenses via Paul Hastings, to which Scottsdale never consented. (Soskin Decl., ECF No. 38-3, ¶¶ 5-9.) In doing so, the Policy was materially breached, thereby relieving Scottsdale of its duty to perform (*i.e.*, to pay

for the Defense Costs) under the Policy. *See, e.g., Walis v. Fernandez*, No. 2:16-cv-00467-RGK-JEM, 2024 U.S. Dist. LEXIS 119288, at *9-10 (C.D. Cal. Jan. 5, 2024) (citing *Brown v. Grimes*, 192 Cal. App. 4th 265, 278, 120 Cal. Rptr. 3d 893 (2011)) ("A material breach of contract excuses further performance by an innocent party.").

"'The general validity of no-voluntary-payment provisions in liability insurance policies is well established.'" *Landmark Am. Ins. Co. v. Taisei Constr. Corp.*, No. CV 16-9169 FMO (PJWx), 2022 U.S. Dist. LEXIS 181042, at *23 (C.D. Cal. Sept. 30, 2022) (quoting *Insua v. Scottsdale Ins. Co.*, 104 Cal. App. 4th 737, 742, 129 Cal. Rptr. 2d 138 (2002)); *see also Faust v. The Travelers*, 55 F.3d 471, 472 (9th Cir. 1995) ("California courts have consistently honored voluntary payment provisions"). "NVP provisions 'are designed to ensure that responsible insurers that promptly accept a defense tendered by their insureds thereby gain control over the defense and settlement of the claim.'" *Taisei*, 2022 U.S. Dist. LEXIS 181042, at *24 (quoting *Jamestown Builders, Inc. v. Gen. Star Indem. Co.*, 77 Cal. App. 4th 341, 346, 91 Cal. Rptr. 2d 514 (1999)); *see also Gribaldo, Jacobs, Jones & Assocs. v. Agrippina Versicherunges A.G.*, 3 Cal. 3d 434, 449, 91 Cal. Rptr. 6, 476 P.2d 406 (1970) ("Their purpose is to prevent collusion as well as to invest the insurer with the complete control and direction of the defense or compromise of suits or claims"). "Thus, an insurer is not required to demonstrate prejudice stemming from violation of an NVP provision." *Taisei*, 2022 U.S. Dist. LEXIS 181042, at *24.

By refusing to use Ms. Kristovich to defend Shelton in the Underlying Action and instead incurring fees and expenses with Paul Hastings without Scottsdale's consent, Shelton breached the NVP Provision, thereby relieving Scottsdale of any obligation to pay any Insured for the Defense Costs. Scottsdale was deprived of the opportunity to control the defense of the Underlying Action, which resulted in Shelton incurring over $7 million in Costs, Charges and Expenses in defense of an action that sought the return of approximately $2.7 million allegedly embezzled by Shelton. (Depo. Ex. 54 at 9; Depo. Ex. 46 at 1.)

Moreover, RepairPal's contention in its Counterclaim that the NVP Provision was

not breached because Scottsdale had an obligation to provide Shelton with independent counsel (aka *Cumis* counsel) in the Underlying Action is incorrect. In California, "[i]f the provisions of a policy of insurance impose a duty on the part of the insurer and a conflict of interest arises which creates a duty on the part of the insurer to provide independent counsel to the insured, the insurer shall provide independent counsel to represent the insured . . . ." Cal. Civ. Code § 2860(a) (LexisNexis 2026). "[W]hen an insurer reserves its rights on a given issue and the outcome of that coverage issue can be controlled by counsel first retained by the insurer for the defense of the claim, a conflict of interest may exist." *Id.* § 2860(b). "A mere possibility of an unspecified conflict does not require independent counsel. The conflict must be significant, not merely theoretical, actual, not merely potential." *Dynamic Concepts v. Truck Ins. Exch.*, 61 Cal. App. 4th 999, 1007, 71 Cal. Rptr. 2d 882 (1998). "Counsel selected and paid by an insurer is not subject to a conflict which gives rise to the right to independent counsel every time the insurer proposes to provide a defense under a reservation of rights." *Native Sun Inv. Gp. v. Ticor Title Co.*, 189 Cal. App. 3d 1265, 1277, 235 Cal. Rptr. 34 (1987). "The crucial fact in *Cumis*, as the court took pains to point out and explain several times, was that the insurer's reservation of rights on the ground of noncoverage was based on the nature of the insured's conduct, which as developed at trial [of the third party claim] would affect the determination as to coverage." *McGee v. Superior Ct.*, 176 Cal. App. 3d 221, 226, 221 Cal. Rptr. 421 (1985). There is no entitlement to independent counsel "where the coverage issue is independent of, or extrinsic to, the issues in the underlying action . . . ." *Dynamic Concepts*, 61 Cal. App. 4th at 1006.

Here, resolution of the Government's claims against Shelton did not control the outcome of whether there would be coverage for the Underlying Action under the Policy, nor did the Government's claims place in issue any rule of law or fact which bore upon the meaning of the Policy. *See Native Sun*, 189 Cal. App. 3d at 1277. Scottsdale only reserved its rights with respect to whether the Underlying Action arose out of the same Wrongful Act or Interrelated Wrongful Acts as a Claim made prior to the Policy Period

and whether the amounts sought in the Underlying Action constituted Loss. (Depo. Ex. 2 at 3-4.) The nature of Shelton's conduct, as developed through counsel at trial, could not have affected whether there would be coverage for the Underlying Action under those Policy provisions. Moreover, Scottsdale's October 2024 letters did not include a general reservation of rights. (Depo. Exs. 2 and 5.) And, in an abundance of caution, Scottsdale also expressly waived its right to control the outcome of or any plea negotiation in the Underlying Action and its right to rely upon the Policy's "Dishonesty/Fraud Exclusion," which would have entitled Scottsdale to recoup the Defense Costs if Shelton had been found to have acted dishonestly or fraudulently. (*Id.*)

Because no conflict of interest existed, Scottsdale was well within its right to exercise its duty to defend and appoint defense counsel. Appleman on Insurance 2d § 136 (2003) ("The existence of the 'duty to defend' clause in the policy offers several benefits to the insurer. It assures that the defense will be conducted by counsel of the insurer's choosing, counsel more likely to be experienced and competent in settlement negotiations and litigation than counsel provided by the insured."). As such, and because Scottsdale did not consent to the Defense Costs incurred by Paul Hastings on behalf of Shelton, Scottsdale is not obligated to pay Shelton or any other Insured for the Defense Costs. As a result, Scottsdale is entitled to summary judgment in its favor on Counts I and II of its Complaint and Counts I and II of the Counterclaim.

**D. There Is No Coverage for the Defense Costs That RepairPal Was Ordered to Pay to Shelton by Virtue of the Contract Exclusion.**

Scottsdale is also not obligated to pay RepairPal for the portion of the Defense Costs that it was ordered to pay Shelton because the Advancement Action (a Claim brought by Shelton against RepairPal under Insuring Clause A(3) of the D&O Coverage Section) alleged, was based upon, arose out of, was attributable to, directly or indirectly resulted from, was in consequence of, or in any way involved the actual or alleged breach of any contract or agreement and, therefore, is excluded under the Contract Exclusion. (Depo. Ex. 26 at D&O Coverage Section § C(2)(a).)

California courts have found that the prefatory language in the Contract Exclusion is "broad and far-reaching in scope." *Scottsdale Ins. Co. v. Beachcomber Mgmt. Crystal Cove, LLC*, No. 8:22-cv-01300-JWH-KES, 2025 U.S. Dist. LEXIS 10403, at *23 (C.D. Cal. Jan. 21, 2025); *Landmark Am. Ins. Co. v. Navigators Ins. Co.*, 354 F. Supp. 3d 1078, 1082 (N.D. Cal. 2018) (noting that "'in any way involving' is the broadest" standard); *Columbia Cas. Co. v. Abdou*, No. 15cv90-LAB (KSC), 2015 U.S. Dist. LEXIS 169036 (S.D. Cal. Dec. 16, 2015) (citing *Nat'l Bank of Ca. v. Progressive Cas. Ins. Co.*, 938 F. Supp. 2d 919, 931 (C.D. Cal. 2013)) (concluding that "the phrase 'in any way involving' is 'language that would only be included to maximally expand the enumerated categories of acts' that are excluded from coverage"); *Aloha Pac., Inc. v. Cal. Ins. Guar. Assn.*, 79 Cal. App. 4th 297, 319, 93 Cal. Rptr. 2d 148 (2000) (citation omitted) (concluding that "arising out of" is language that "broadly links a factual situation with the event creating liability, and connotes only a minimal causal connection or incidental relationship").

In addition, California courts have applied similar contract exclusions to preclude coverage for lawsuits that arise primarily out of a contract, even when the lawsuit includes tort claims premised upon contract. *RLI Ins. Co. v. Greater Los Angeles Zoo Ass'n*, No. CV 25-2701-DMG (MAAx), 2025 U.S. Dist. LEXIS 275730, at *16-23 (C.D. Cal. Nov. 14, 2025) (contract exclusion with similar prefatory language precluded coverage for lawsuit alleging breach of contract, declaratory relief, conversion, breach of fiduciary duty, and breach of the implied covenant of good faith and fair dealing); *Mt. Hawley Ins. Co. v. McAtamney*, No. 23-cv-01335-JST, 2024 U.S. Dist. LEXIS 497, at *12 (N.D. Cal. Jan. 2, 2024) (contract exclusion precluded coverage for lawsuit alleging breach of contract, breach of implied warranty, negligence, negligent supervision, and declaratory relief); *James River Ins. Co. v. Medolac Labs.*, 290 F. Supp. 3d 956, 970 (C.D. Cal. 2018) (contract exclusion precluded coverage for lawsuit alleging breach of contract, conversion, unfair competition, and intentional interference with prospective economic advantage); *see also Am. Legacy Found., RP v. Nat'l Union Fire Ins. Co.*, 623

F.3d 135, 137, 143 (3d Cir. 2010) (breach of contract exclusion precluded coverage for counterclaims alleging breach of a master services agreement and of the corporation's bylaws and certificate of incorporation, declaratory judgment, and trespass to chattel).

For example, in *Office Depot, Inc. v. AIG Speciality Ins. Co.*, the Ninth Circuit Court of Appeals found that a contract exclusion with the same prefatory language as in the Contract Exclusion here precluded coverage for a lawsuit alleging violations of the False Claims Act "because the allegations "were related to [the insured's] performance or nonperformance of [their] government contracts." 829 Fed. Appx. 263, 264 (9th Cir. 2020). In so holding, the Court stated: "We conclude, ***noting the uncomfortable breadth of such contract exclusions***, that the allegations in the *Sherwin* lawsuit are premised directly or indirectly on Office Depot's contractual obligations and therefore the lawsuit is precluded from coverage under the contract exclusion." *Id.*(emphasis added).

In the Advancement Action, Shelton alleged that RepairPal breached the Bylaws and the Indemnification Agreement when it failed to indemnify him for the Defense Costs. (Depo. Ex. 62 ¶¶ 35, 40.) The Indemnification Agreement is a contract entered into between Shelton and RepairPal on February 24, 2020. (Depo. Ex. 52.) In addition, a corporation's bylaws are considered contracts in Delaware. *Am. Legacy Found. v. Nat'l Union Fire Ins. Co.*, 640 F. Supp. 2d 524, 538 (D. Del. 2009) (citing *Benihana of Tokyo, Inc. v. Benihana, Inc.,* 906 A.2d 114, 120 (Del. 2006); *Jana Master Fund, Ltd. V. CNET Networks, Inc.,* 954 A.2d 335, 338 (Del. Ch. 2008); *Centaur Partners, IV v. Natl. Intergp., Inc.*, 582 A.2d 923, 928 (Del. 1990); *see also Stifel Fin. Corp. v. Cochran*, 809 A.2d 555, 559 (Del. 2002) ("[I]ndemnification is a right conferred by contract, under statutory auspice."); *Lee v. Fisher*, 70 F. 4th 1129, 1138, n. 4 (9th Cir. 2023) (interpreting Delaware law).

Indeed, in the Advancement Action, Shelton did not seek advancement of the Defense Costs under any non-contractual theory, such as breach of fiduciary duty or pursuant to a statute. (*See* Depo. Ex. 67) (email from RepairPal's insurance agent to RepairPal explaining that, in Scottsdale's coverage position regarding the Advancement

Action, Scottsdale was "taking the position that there is no coverage due to the contract exclusion as the only wrongful act alleged against RepairPal ***was breach of the advancement agreement as opposed to a breach of fiduciary duty***.") (emphasis added). In addition, the court in the Advancement Action explained that the reason it was ordering RepairPal to indemnify Shelton for approximately two-thirds of the Defense Costs was due to RepairPal's obligations under the Indemnification Agreement specifically. (Depo. Ex. 65 at 49:1-17) (***"[T]o the extent some reasoning is warranted here, I view the indemnification agreement issue to be very broad.*** It ties corporate capacity to an agency relationship, not just officer and director. And as I read Section 13(b) of the agreement, by its plain language, the agreement is retroactive to uncover events that occurred before the effective date of the agreement. . . . ***So regardless of what the bylaws say, the plaintiff is entitled to advancement*** for events that occurred prior to the effective time of the indemnification agreement so long as the actions were taken by reason of the fact that he was acting as an agent of the company.") (emphasis added).

Therefore, the Contract Exclusion precludes coverage for the Defense Costs RepairPal was ordered to pay Shelton in the Advancement Action, and Scottsdale is entitled to summary judgment on Counts I and II of the Counterclaim.

**E. There Is No Coverage for the Defense Costs That RepairPal Was Ordered to Pay to Shelton Because They Do Not Constitute Loss for a Wrongful Act.**

Even in the absence of the Contract Exclusion, there is still no coverage for the Defense Costs that RepairPal was ordered to pay Shelton in the Advancement Action because, in California, "Claims" seeking to enforce a contractual right or obligation do not seek "Loss" resulting from a "Claim" for a "Wrongful Act."

California courts recognize that "[p]erformance of a contractual obligation . . . is a debt the corporation voluntarily accepted" and "not a loss resulting from a wrongful act within the meaning of [a D&O] policy." *August Enter., Inc. v. Philadelphia Indem.*

*Ins. Co.*, 146 Cal. App. 4th 565, 581-82, 52 Cal. Rptr. 3d 908 (2007) ("*Even in the absence of an express contract exclusion*, courts have held that a claim alleging breach of contract is not covered under a professional liability policy because there is no 'wrongful act' and no 'loss' since the insured is simply being required to pay an amount it agreed to pay") (emphasis in original); *Health Net, Inc. v. RLI Ins. Co.*, 206 Cal. App. 4th 232, 253, 141 Cal. Rptr. 3d 649 (2012) (same). "To hold otherwise would make [the insurer] a de facto party to a corporate contract and require [the insurer] to pay the *full* contract price (plus interest), letting the corporation completely off the hook." *August Enter.,* 146 Cal. App. 4th at 581 (emphasis in original); *see also Screen Actors Guild Inc. v. Fed. Ins. Co.*, 2013 U.S. Dist. LEXIS 100638, at *16 (C.D. Cal. Jul. 11, 2013) ("[I]f a contracting party fails to pay amounts due under a lawful contract and is sued for that failure to pay, it cannot then obtain a windfall by having its payments covered by an insurance policy covering only 'wrongful acts.'"). It would also "create a moral hazard problem, encouraging corporations to risk a breach of their contractual obligations, knowing that, in the event of a breach, the D&O insurer would ultimately be responsible for paying the debt. *August Enter.,* 146 Cal. App. 4th 581; *see also Oak Park Calabasas Condo. Ass'n v. State Farm Fire & Cas. Co.*, 137 Cal. App. 4th 557, 565, 40 Cal. Rptr. 3d 263 (2006).

Here, RepairPal voluntarily assumed its indemnification obligations to Shelton under the Indemnification Agreement, which, as the agreement makes clear, are broader than and in addition to those set forth in the Bylaws. (Depo. Ex. 52 § 3(a)) ("Notwithstanding any other provision of this Agreement, [RepairPal] hereby agrees to indemnify [Shelton] to the fullest extent permitted by law, ***notwithstanding that such indemnification is not specifically authorized by . . . [RepairPal's] Bylaws or by statute***." (emphasis added). Then RepairPal elected not to pay its contractual obligations owed to Shelton under the Indemnification Agreement. The Delaware court specifically found that the basis for the advancement order was the obligation imposed by the Indemnification Agreement and not the Bylaws. (Depo. Ex. 65 at 48:12-49:17 and 50:7-

10.) Scottsdale, as a liability insurer, should not be obligated to pay for RepairPal's assumed contractual obligations or its intentional decision not to fulfill such obligations. Because the Defense Costs that RepairPal paid to Shelton are not Loss for a Wrongful Act, Scottsdale is entitled to summary judgment in its favor on Counts I and II of the Counterclaim.

**F. There Is No Coverage for the Defense Costs That RepairPal Was Ordered to Pay to Shelton By Virtue of the Insured v. Insured Exclusion.**

There is also no coverage for the Defense Costs that RepairPal was ordered to pay to Shelton in the Advancement Action because the Advancement Action was brought by Shelton, an Insured under the Policy, against RepairPal, also an Insured and, therefore, is precluded from coverage by the Insured v. Insured Exclusion. (Shaw Depo. at 164:10-14) (acknowledging that RepairPal and Shelton are Insureds).

Insured v. Insured exclusions "arose in response to lawsuits in which 'insured corporations sued their own directors to recoup operational losses caused by improvident or unauthorized actions, creating problems of moral hazard, collusion, and unintentional expansion of coverage." *Lee v. Nat'l Union Fire. Ins. Co.*, No. CV 14-2396-GHK (MRWx), 2014 U.S. Dist. LEXIS 194904, at *6 (C.D. Cal. Jul 9, 2014) (quoting *Biltmore Assocs., LLC v. Twin City Fire Ins. Co.*, 572 F.3d 663, 668 (9th Cir. 2009)). Stated differently, insurers include Insured v. Insured exclusions in D&O policies to protect "[t]he reasonable expectations of the parties [to the insurance policy that the policy is designed to] protect[] claims by outsiders, not intra-company claims." *Biltmore*, 572 F.3d at 668. And California courts have frequently applied Insured v. Insured exclusions to preclude coverage for such intra-company disputes like the intra-company dispute here between Shelton and RepairPal. *E.g., Lee*, 2014 U.S. Dist. LEXIS 194904, at *6 (finding insured-versus-insured exclusion barred coverage for claims by a non-profit against its former directors, even though they were "true adversaries" and there was no allegation of collusion between the parties); *FDIC v. BancInsure, Inc.*, 675

F.App'x 666, 668 (9th Cir. 2017) (finding an insured-versus-insured exclusion barred coverage for tort claims by the FDIC receiver for a California bank against the bank's former directors and officers); *Hawker v. Doak*, 685 F.App'x 565, 567 (9th Cir. 2017) (same).

Moreover, RepairPal cannot meet its burden to prove that any exception to the Insured v. Insured Exclusion applies, including the exception for Claims brought or maintained by an Insured "in the form of a cross-claim, third-party claim or other proceeding for contribution or indemnity which is part of, and directly results from a Claim that is covered by" the D&O Coverage Section, for two reasons. *See, e.g., Am. States Ins. Co. v. Sacramento Plating Inc.*, No. 94-16905, 1996 U.S. App. LEXIS 41175, at *6 (9th Cir. Oct. 25, 1996) (applying California law) ("The insured has the burden of proving a claim is covered under an exception to a exclusion . . . ."). First, Shelton's claim for indemnification was not brought in the form of a claim or proceeding that was part of the Underlying Action. Rather, it was brought in a separate proceeding in Delaware. Second, Shelton's claim for indemnification does not result from a Claim that is covered by the D&O Coverage Section. As explained above, Shelton rejected the coverage that Scottsdale offered in connection with the Underlying Action and incurred Costs, Charges and Expenses without Scottsdale's consent and, in doing so, breached the NVP Provision of the Policy. At that point, Scottsdale no longer had any obligation to perform under the Policy in connection with the Underlying Action and the Underlying Action was not a covered Claim. *See Czerwinski v. Scottsdale Ins. Co.*, No. CV 17-4408 PA (MRWx), 2017 U.S. Dist. LEXIS 147727, at *19-21 (C.D. Cal. Sept. 11, 2017) (finding identical exception to Insured v. Insured exclusion did not apply to a claim because the indemnification request did not result from a claim covered by the D&O coverage section).

Because the Insured v. Insured Exclusion precludes coverage for the Defense Costs RepairPal was ordered to pay to Shelton in the Advancement Action, Scottsdale is entitled to summary judgment on Counts I and II of the Counterclaim.

**G. RepairPal Was Not Entitled to Independent Counsel in the Advancement Action.**

For the same reasons that Shelton was not entitled to independent counsel in the Underlying Action, RepairPal was also not entitled to independent counsel in the Advancement Action.

Disposition of Shelton's claims against RepairPal could not control the outcome of whether there would be coverage for the Advancement Action under the Policy, nor did Shelton's claim place in issue any rule of law or fact which bore upon the meaning of the Policy. *See Native Sun*, 189 Cal. App. 3d at 1277. For example, Scottsdale's appointed defense counsel could not have steered the Advancement Action in or out of the Contract Exclusion as the only claims alleged against RepairPal were for breach of contract (i.e., there were no tort claims alleged). Similarly, Scottsdale's appointed defense counsel could not have steered the Advancement Action in or out of the Insured v. Insured Exclusion as it is undisputed that both Shelton and RepairPal were Insureds under the Policy as that was the reason Scottsdale offered to provide them a defense in the Underlying Action and Advancement Action, respectively. Therefore, there was no actual conflict of interest entitling RepairPal to independent counsel and, as a result, Scottsdale is entitled to summary judgment on Counts I and II of the Counterclaim.

**H. RepairPal's Cause of Action for Bad Faith Fails as a Matter of Law.**

Because there is no coverage for the Defense Costs under the Policy and neither Shelton nor RepairPal were entitled to independent counsel, RepairPal's cause of action for breach of the covenant of good faith fails as a matter of law. The elements of a cause of action for breach of the covenant of good faith are: (1) withholding of benefits that are due under the policy; and (2) the withholding of such benefits unreasonably or without proper cause. *Waller v. Truck Ins. Exch., Inc.*, 11 Cal. 4th 1, 35-36, 900 P.2d 619, 44 Cal. Rptr. 2d 370 (1995); *Love v. Fire Ins. Exch.*, 221 Cal. App. 3d 1136, 1151, 271 Cal. Rptr. 246 (1990). The implied covenant of good faith "prevents a party from acting in bad faith to frustrate the contract's *actual* benefits." *Guz v. Bechtel Nat'l, Inc.*,

24 Cal. 4th 317, 353, n. 18, 100 Cal. Rptr. 2d 352, 377 (2000) (emphasis in original). The implied covenant is "a supplement to the express contractual covenants, [which exists] to prevent a contracting party from engaging in conduct which (while not technically transgressing the express covenants) frustrates the other party's rights to the benefits of the contract." *Love*, 221 Cal. App. 3d at 1153 (emphasis in original).

"Absent [a primary] contractual right [that has been breached] . . . the implied covenant has nothing upon which to act as a supplement, and should not be endowed with an existence independent of its contractual underpinnings." *Waller*, 11 Cal. 4th at 36 (internal quotation marks and citations omitted). "[A] bad faith claim cannot be maintained unless policy benefits are due . . . . [This] legal principle is based on general contract law and the long-standing rule that neither party will do anything which will injure the right of the other to receive the benefits of the agreement." *Id.* (citation and quotation marks omitted). "If a party does not have any rights under an agreement in the first place, there are not contractual rights to injure." *Travelers Cas. Ins. Co. of Am. v. Mesriani & Assocs.*, No. CV-14-7898, 2015 U.S. Dist. LEXIS 194247, at *16 (C.D. Cal. Apr. 1, 2015). Thus, because Scottsdale did not breach the Policy when it did not pay for the Defense Costs and did not provide RepairPal or Shelton with independent counsel, RepairPal's cause of action for bad faith fails as a matter of law and Scottsdale is entitled to summary judgment in its favor on Count III of the Counterclaim.

## IV. CONCLUSION

For the foregoing reasons, Scottsdale is entitled to summary judgment in its favor on all of the causes of action in its Complaint and all of the causes of action against it in RepairPal's Counterclaim.

Respectfully submitted,

DATED: August 6, 2026 **COZEN O'CONNOR**

*/s/ Valerie Rojas*
Valerie Rojas
Attorneys for Scottsdale Insurance Company