Tyler Gerking (State Bar No. 222088)
tgerking@fbm.com
Shanti Eagle (State Bar No. 267704)
seagle@fbm.com
Chris Hamborsky (State Bar No. 362284)
chamborsky@fbm.com
Farella Braun + Martel LLP
One Bush Plaza, Suite 900
San Francisco, CA 94104
Telephone: (415) 954-4400
Facsimile: (415) 954-4480

Attorneys for Defendant and Counterclaimant
REPAIRPAL, INC.

**UNITED STATES DISTRICT COURT**

**NORTHERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| SCOTTSDALE INSURANCE COMPANY, an Ohio corporation,<br><br>Plaintiff,<br><br>vs.<br><br>REPAIRPAL, INC., a Delaware corporation, and AUBREY JACKSON SHELTON II, a California citizen,<br><br>Defendants. | Case No. 4:25-cv-05094-JST<br><br>**DEFENDANT REPAIRPAL INC.'S NOTICE OF MOTION AND MOTION FOR PARTIAL SUMMARY JUDGMENT, AND OPPOSITION TO SCOTTSDALE'S MOTION FOR SUMMARY JUDGMENT**<br><br>Date: October 29, 2026<br>Time: 2:00 p.m.<br>Crtrm.: 6<br><br>Judge: The Hon. Jon S. Tigar<br><br>Action Filed: June 16, 2025<br>Trial Date: May 24, 2027 |
| AND RELATED COUNTERCLAIM. | |

PLEASE TAKE NOTICE that, at the above-referenced time and place, or as soon thereafter as the matter may be heard before the Honorable Jon S. Tigar, REPAIRPAL, INC. ("RepairPal") will, and hereby does, move this Court for an order granting partial summary judgment under Federal Rule of Civil Procedure 56 on the First Cause of Action (Breach of Contract) and the Second Cause of Action (Declaratory Relief) in RepairPal's Counterclaim, and opposes the Motion of SCOTTSDALE INSURANCE COMPANY ("Scottsdale") for Summary Judgment [ECF 48]. This Motion and Opposition are based on this Notice, the Memorandum of Points and Authorities, the Request for Judicial Notice and supporting declaration(s) and exhibits, the papers on file in this action, and such further argument and evidence as may be presented.

## TABLE OF CONTENTS

Page


I. STATEMENT OF ISSUES TO BE DECIDED ..... 1

II. INTRODUCTION ..... 1

III. UNDISPUTED FACTS ..... 3

A. Scottsdale Sold RepairPal a "Business and Management Indemnity" Policy Covering RepairPal's Indemnification of its Directors and Officers. ..... 3

B. Shelton Was Indicted and Prosecuted for Allegedly Stealing Money from RepairPal and Tax Evasion. ..... 6

C. Scottsdale Acknowledged Its Duty to Defend Shelton and Insisted on Controlling His Defense of the Criminal Action. ..... 6

D. Shelton Sued RepairPal for Advancement and Indemnification in Delaware. ..... 7

E. Scottsdale Controlled RepairPal's Defense in the Advancement Action Without Reserving Rights, and the Delaware Court Ordered RepairPal to Advance. ..... 7

F. The Criminal and Advancement Actions Resolved In Shelton's Favor, RepairPal Indemnified Shelton, and Scottsdale Sued RepairPal. ..... 9

IV. ARGUMENT ..... 10

A. RepairPal is Entitled to Coverage Under Both Insuring Clauses A.2 and A.3. ..... 10

1. Insuring Clause A.2 Covers RepairPal's Indemnification of Shelton. ..... 11

2. Insuring Clause A.3 Covers RepairPal's Payments to Shelton. ..... 12

B. Scottsdale Cannot Meet its Burden of Proving that a Policy Condition or Exclusion Eliminates Coverage for RepairPal's Indemnification of Shelton. ..... 12

1. Shelton's Selection of Counsel Does Not Eliminate RepairPal's Coverage. ..... 12

a. Shelton's Alleged Breach of the Consent Clause is Irrelevant. ..... 12

b. Shelton did not Breach the Consent Clause; Scottsdale Did. ..... 14

(1) California Law Required Scottsdale to Allow Shelton to Use Independent Counsel in the Criminal Action. ..... 14

(2) Scottsdale's Refusal to Consent was Unreasonable. ..... 18

2. No Exclusions Eliminate RepairPal's Coverage. ..... 20

a. The IvI Exclusion Does Not Eliminate RepairPal's Coverage. ..... 20

b. The Contract Exclusion Does Not Eliminate RepairPal's Coverage. ....21

c. RepairPal's Indemnification of Shelton Constitutes Covered "Loss" for a "Wrongful Act" under Insuring Clause A.3. ....22

3. Scottsdale Waived its Right to Deny Coverage to RepairPal and is Estopped from Doing So....23

C. RepairPal Is Entitled to Damages for the Remaining Policy Limit and Pre-Judgment Interest....25

V. CONCLUSION....25

# TABLE OF AUTHORITIES

**Page(s)**

## FEDERAL CASES

*Air & Liquid Sys. Corp. v. Allianz Underwriters Ins. Co.*,
No. CIV.A. 11-247, 2013 WL 5436934 (W.D. Pa. Sept. 27, 2013) ....................19

*Certain Underwriters at Lloyd's of London v. Pac. Sw. Airlines*,
786 F. Supp. 867 (C.D. Cal. 1992)....................24

*Kunin v. Benefit Trust Life Ins. Co.*,
910 F.2d 534 (9th Cir. 1990)....................13

*L.A. Terminals, Inc. v. United Nat'l Ins. Co.*,
608 F. Supp. 3d 968 (C.D. Cal. 2022) *aff'd in part* 2025 WL 1024392 (9th Cir. Apr. 7, 2025) ....................17

*SI Venture Holdings, LLC v. Catlin Specialty Insurance*,
118 F. Supp. 3d 548 (S.D.N.Y. 2015)....................18

*Skanska USA Civ. W. Cal. Dist. Inc. v. Nat'l Interstate Ins. Co.*,
551 F. Supp. 3d 1010 (S.D. Cal. 2021) ....................19

*Slottow v. Am. Cas. Co. of Reading, Penn.*,
10 F.3d 1355 (9th Cir. 1993)....................22

## STATE CASES

*Archdale v. Am. Internat. Specialty Lines Ins. Co.*,
154 Cal. App. 4th 449 (2007)....................19

*Aug. Ent., Inc. v. Phil. Indem. Ins. Co.*,
146 Cal. App. 4th 565 (2007)....................18

*Aydin Corp. v. First State Ins. Co.*,
18 Cal. 4th 1183 (1998)....................10,21

*Chamison v. HealthTrust, Inc.—The Hospital Co.*,
735 A.2d 912 (Del. Ch. 1999)....................18

*Comunale v. Traders & Gen. Ins. Co.*,
328 P.2d 198 (Cal. 1958) ....................19

*Dart Indus., Inc. v. Com. Union Ins. Co.*,
28 Cal. 4th 1059 (2002)....................13

*Dynamic Concepts, Inc. v. Truck Ins. Exch.*,
61 Cal.App.4th 999 (1998)....................20

*E.M.M.I. Inc. v. Zurich Am. Ins. Co.*,
32 Cal. 4th 465 (2004)....14,21

*Garvey v. State Farm Fire & Cas. Co.*,
48 Cal. 3d 395 (1989)....12

*James 3 Corp. v. Truck Ins. Exch.*,
91 Cal. App. 4th 1093 (2001)....16

*Jamestown Builders, Inc. v. Gen. Star Indem. Co.*,
77 Cal. App. 4th 341 (1999)....14,20

*Long v. Century Indem. Co.*,
163 Cal. App. 4th 1460 (2008)....16

*MacKinnon v. Truck Ins. Exch.*,
31 Cal. 4th 635 (2003)....20

*Masonite Corp. v. Great Am. Surplus Lines Ins. Co.*,
224 Cal. App. 3d 912 (1990)....12

*Miller v. Elite Ins. Co.*,
100 Cal. App. 3d 739 (1980)....23,24

*Mirpad, LLC v. Cal. Ins. Guar. Assn.*,
132 Cal. App. 4th 1058 (2005)....21

*Paulfrey v. Blue Chip Stamps*,
150 Cal. App. 3d 187 (Ct. App. 1983)....19

*Pepper Indus., Inc. v. Home Ins. Co.*,
67 Cal. App. 3d 1012 (Ct. App. 1977)....13

*Pontone v. Milso Industries Corp.*,
100 A.3d 1023 (Del. Ch. 2014)....14

*Reserve Ins. Co. v. Pisciotta*,
30 Cal. 3d 800 (1982)....21

*Safeco Ins. Co. of Am. v. Robert S.*,
26 Cal. 4th 758 (2001)....13

*San Diego Navy Fed. Credit Union v. Cumis Ins. Soc'y, Inc.*,
162 Cal. App. 3d 358 (1984)....16

*Spray, Gould & Bowers v. Assoc. Internat. Ins. Co.*,
71 Cal. App. 4th 1260 (1999)....24,25

*Stalberg v. Western Title Ins. Co.*,
230 Cal. App. 3d 1223 (1991)....20

*Stonewall Ins. Co. v. City of Palos Verdes Estate*s,
46 Cal. App. 4th 1810 (1996) .......... 24

*Tomerlin v. Canadian Indem. Co.*,
61 Cal. 2d 638 (1964) .......... *passim*

*Wint v. Fid. & Cas. Co.*,
9 Cal. 3d 257 (1973) .......... 15

**FEDERAL RULES AND REGULATIONS**

Fed. R. Civ. P. 56(a) .......... 10,25

**STATE STATUTES**

Cal. Civ. Code
§ 1641 .......... 13,21
§ 2860 .......... 16,19
§ 3287(a), 3289(b) .......... 1,25

Cal. Code Regs. Title 10
§ 2695.4 .......... 24

**OTHER AUTHORITIES**

Croskey et al., Cal. Practice Guide: Ins. Litigation § 7:790a (Rutter, 2026) .......... 18

Farella Braun + Martel LLP
One Bush Street, Suite 900
San Francisco, California 94104
(415) 954-4400

## I. STATEMENT OF ISSUES TO BE DECIDED

A. Whether RepairPal, Inc. ("RepairPal") is entitled to partial summary judgment on the First Cause of Action (Breach of Contract) in its Counterclaim and on the First Cause of Action (Declaratory Relief) and the Second Cause of Action (Breach of Contract) in the Complaint of Scottsdale Insurance Company ("Scottsdale") because Scottsdale breached the applicable insurance policy in the three following ways, each of which is sufficient to grant RepairPal's motion and to deny Scottsdale's motion [ECF 48]:

1. Refusing to pay RepairPal's covered Loss under Insuring Clause A.2 for amounts RepairPal indemnified its former officer (Aubrey Jackson Shelton II ("Shelton")) in an underlying criminal action.

2. Refusing to pay RepairPal's covered Loss under Insuring Clause A.3 for which RepairPal was liable by reason of the claim Shelton made against RepairPal during the policy period for a Wrongful Act allegedly committed before the end of the policy period.

3. Unreasonably rejecting Shelton and/or RepairPal's requests to use independent counsel despite conflicts of interest.

B. Whether Scottsdale is liable to RepairPal for damages totaling the remaining limit of the applicable insurance policy in the amount of $4,761,402.47, plus statutory pre-judgment interest for its breach of contract. Cal. Civil Code §§ 3287(a), 3289(b).

C. Whether RepairPal is entitled to partial summary judgment on its Second Cause of Action (Declaratory Relief) because Scottsdale owes coverage under the applicable insurance policy for the amounts RepairPal indemnified Shelton and Shelton's refusal of Scottsdale's appointed defense counsel does not preclude or otherwise affect RepairPal's coverage.[1]

## II. INTRODUCTION

The directors and officers ("D&O") liability insurance that Scottsdale sold RepairPal expressly covers RepairPal's "required or permitted" indemnification of its directors, officers and employees. Indeed, that is one of the main risks such insurance was created to cover nearly 100 years ago. These few

---

[1] RepairPal is not moving for partial summary judgment on the Third Cause of Action (Breach of the Implied Covenant of Good Faith and Fair Dealing) in its Counterclaim.

undisputed facts entitle RepairPal to that coverage under the D&O policy's Insuring Clause A.2: RepairPal indemnified its former employee and officer, Aubrey Jackson Shelton II ("Shelton"), pursuant to a Delaware court order, and in accordance with its bylaws and an indemnification agreement, for over $6 million in defense costs he incurred in an underlying criminal action that ended without a conviction, and RepairPal complied with its obligations under the D&O policy.

Scottsdale ignores Insuring Clause A.2 entirely, focusing instead on Insuring Clause A.3, which separately covers third-party claims against the company. This sleight of hand distracts attention from the simple coverage analysis above, but it does not allow Scottsdale to avoid coverage. First, Scottsdale wants the Court to assume that the company indemnification coverage under Insuring Clause A.2 disappeared just because Shelton sued RepairPal for advancement and indemnification. But nothing in the policy makes Insuring Clause A.2 inapplicable just because RepairPal's indemnification of Shelton came after Shelton filed a lawsuit and obtained a court order requiring it. Second, the third-party claim coverage under Insuring Clause A.3 separately applies because Scottsdale cannot meet its burden of proving that any of the policy limitations it raises eliminate the coverage.

Scottsdale's primary defense is that RepairPal lost its coverage when Shelton allegedly breached the policy's consent clause by using his own counsel, instead of Scottsdale's appointed panel counsel, to defend the criminal action even though RepairPal had no control over Shelton's defense counsel selection. Scottsdale is wrong. First, Shelton's alleged breach is irrelevant to RepairPal's coverage under Insuring Clauses A.2 and A.3 because the policy does not impute Shelton's alleged breach to RepairPal and it would be contrary to RepairPal's reasonable expectations of coverage when RepairPal itself had no control over Shelton's defense counsel selection. Second, the undisputed facts establish that ***Scottsdale***, not Shelton, breached the policy. Scottsdale refused—contrary to California law and unreasonably—to allow Shelton to use independent counsel in the criminal action despite glaring conflicts of interest. Scottsdale's only interest was in reducing its defense cost expenditure because it owed no coverage for, and thus had no stake, in the outcome while Shelton had every interest in mounting a vigorous defense to avoid jail time, restitution and fines. Additionally, the interests of Scottsdale's two insureds—Shelton and RepairPal—were in direct conflict because Shelton was prosecuted for, among other things, allegedly stealing money from RepairPal and Shelton sued RepairPal

for advancement and indemnification.

Scottsdale also cannot meet its burden to prove that any of the three coverage limitations it raises plainly and clearly eliminate coverage. First, the insured-v-insured exclusion has an exception that expressly restores coverage for indemnity claims that are part of and result from a covered claim, as was clearly the case here and as must be the case in ***all*** company indemnification coverage claims because it is the core risk covered by directors and officers liability insurance. Second, the breach-of-contract exclusion, by the policy's express terms, does not apply to the company indemnification coverage under Insuring Clause A.2. This is why Scottsdale ignores Insuring Clause A.2 and focuses exclusively on the third-party claim coverage under Insuring Clause A.3. But the exclusion also does not apply to Insuring Clause A.3 here. The Delaware court declared the scope of RepairPal's advancement and indemnification obligations to Shelton and ordered RepairPal to perform them, as opposed to awarding breach of contract damages, and RepairPal then paid most of Shelton's defense costs as he incurred them pursuant to the order. Third, Scottsdale's far-fetched argument that a company's indemnity obligation is an uninsurable contractual obligation is non-sensical and inconsistent with the policy's purpose. The D&O policy expressly covers the company when it is required or permitted to indemnify its directors and officers under applicable law, the corporate bylaws or an indemnification contract.

Last, Scottsdale waived its right to deny, and is estopped from denying, coverage to RepairPal. It is undisputed that Scottsdale agreed to defend RepairPal in Shelton's Delaware court action seeking advancement and indemnification, did not reserve any rights while requiring RepairPal to use appointed panel counsel, only attempted to reserve its rights ***after*** the Delaware court ruled that RepairPal was required to advance Shelton's defense costs, and never communicated a coverage position after being informed by its appointed counsel that RepairPal had no choice but to indemnify Shelton after the criminal action ended without a conviction. RepairPal would have taken action to avoid over $6 million in losses had it known Scottsdale would deny coverage for it all.

Accordingly, RepairPal respectfully requests that the Court grant partial summary judgment on its breach of contract and declaratory relief claims and deny Scottsdale's summary judgment motion.

## III. <u>UNDISPUTED FACTS</u>

### A. Scottsdale Sold RepairPal a "Business and Management Indemnity" Policy

**Covering RepairPal's Indemnification of its Directors and Officers.**

RepairPal is an automotive technology company that connects consumers with vetted repair shops for automotive repair needs. Declaration of S. Eagle, Ex. A, Shaw Depo. at 18:12–15. RepairPal purchased Business and Management Indemnity Policy No. EKS3468389 from Scottsdale for the period March 1, 2023 through March 1, 2024 (the "Policy"). Depo. Ex. 26.[2] The Policy includes a Directors and Officers and Company ("D&O") Coverage Section, which contains three "Insuring Clauses" that cover:

> A.1: "the Loss of the Directors and Officers ***for which the Directors and Officers are not indemnified by the Company*** and which the Directors and Officers have become legally obligated to pay by reason of a Claim first made against the Directors and Officers during the Policy Period . . ." *Id.*, D&O Coverage Section § A.1.[3]

> A.2: "the ***Loss of the Company for which the Company has indemnified the Directors and Officers*** and which the Directors and Officers have become legally obligated to pay by reason of a Claim first made against the Directors and Officers during the Policy Period . . . and reported to the Insurer pursuant to Section E.1. herein, for any Wrongful Act taking place prior to the end of the Policy Period." *Id.*, § A.2.

> A.3: "the ***Loss of the Company which the Company becomes legally obligated to pay by reason of a Claim first made against the Company*** during the Policy Period . . . and reported to the Insurer pursuant to Section E.1. herein, for any Wrongful Act taking place prior to the end of the Policy Period." *Id.*, § A.3.

A $5 million aggregate limit applies to all three Insuring Clauses. *Id.*, § D.2, Decl. Item 3. Insuring Clauses A.2 and A.3 are subject to a $25,000 per Claim self-insured retention, which RepairPal must pay in covered Loss before Insuring Clauses A.2 or A.3 apply. *Id.*, § D.1, Decl. Item 3. The Policy states:

> ***Insuring Clause A.2. and the applicable retention thereto shall apply to Loss resulting from any Claim if indemnification by the Company for such Claim is required or permitted by applicable law, to the fullest extent so required or permitted, regardless of whether or not such actual indemnification by the Company is made***, except and to the extent such indemnification is not made by the Company solely by reason of a Financial Impairment Situation.

*Id.*, § D.4, as amended by End. 28.[4] "Insured" means the "Company" and "Directors and Officers." *Id.*, § B.5. The "Company" is RepairPal. *Id.*, General Terms & Conditions §§ B.2, 7; Decl. Item 7. "Directors and Officers means any person who was, now is or shall become . . . a. a duly elected or appointed

---

[2] All Deposition Exhibits referenced herein are attached to the Declaration of S. Eagle.
[3] All bold italic emphasis added throughout this brief, unless otherwise indicated.
[4] There was not a "Financial Impairment Situation" here, which requires the bankruptcy or receivership of RepairPal. *Id*.

director, officer, or … a full-time or part-time employee of the Company. . . .” *Id.*, B.4. “Claim” includes “a. a written demand against any Insured for monetary damages or non-monetary relief or injunctive relief; . . . c. a civil proceeding against any Insured seeking monetary damages or non-monetary relief or injunctive relief, commenced by the service of a complaint or similar pleading; . . . d. a criminal proceeding against any Insured commenced by the return of an indictment . . . .” *Id.*, § B.1. “Wrongful Act” means “any actual or alleged error, omission, misleading statement, misstatement, neglect, breach of duty or act allegedly committed or attempted by: a. any of the Directors and Officers, while acting in their capacity as such . . .; c. the Company, but only with respect to Insuring Clause 3. of this Coverage Section. *Id.*, § B.9. Subject to certain exceptions, the Policy defines “Loss” to mean “damages, judgments, settlements, pre-judgment or post-judgment interest awarded by a court, and Costs, Charges and Expenses incurred by Directors and Officers under Insuring Clauses 1. or 2. or the Company under Insuring Clause 3.” *Id.*, § B.7. “Costs, Charges and Expenses” are, among other things, “reasonable and necessary legal costs, charges, fees and expenses incurred ***by any of the Insureds*** in defending Claims ….” *Id.*, § B.3. Two of the Policy’s exclusions are potentially relevant here:

> Exclusion C.1.e eliminates coverage for “Loss . . . on account of any Claim . . . brought or maintained by, on behalf of, in the right of, or at the direction of any Insured in any capacity . . . ***unless such Claim***: . . . ii. ***is brought or maintained by any Insured in the form of a*** cross-claim, third-party claim or ***other proceeding for*** contribution or ***indemnity which is part of, and directly results from a Claim that is covered by this Coverage Section***; . . . .” *Id.*, D&O Coverage Section § C.1.e, as amended by Ends. 11, 26, 27 (“IvI Exclusion”).

> Exclusion C.2.a eliminates coverage for “Loss . . . on account of any Claim . . . alleging, based upon, arising out of, attributable to, directly or indirectly resulting from, in consequence of, or in any way involving ***the actual or alleged breach of any contract or agreement***; ***except and to the extent the Company would have been liable in the absence of such contract or agreement***.” *Id.*, D&O Coverage Section § C.2.a (“Contract Exclusion”).

***The Contract Exclusion applies only to Insuring Clause A.3; it does not apply to Insuring Clause A.2***. *Id.*, § C. The Policy imposes a duty on Scottsdale to defend Insureds against Claims. *Id.*, § F.1. The Insureds may not “settle or offer to settle any Claim, incur any Costs, Charges and Expenses … with respect to any Claim without the prior written consent of the Insurer, ***such consent not to be unreasonably withheld***.” *Id.*, § F.3 (“Consent Clause”).

**B. Shelton Was Indicted and Prosecuted for Allegedly Stealing Money from RepairPal and Tax Evasion.**

Shelton was a Vice President of Finance and Administration and an officer of RepairPal. Eagle Dec., Ex. A (Shaw Depo. at 28:4-11). Shelton allegedly stole $2.7 million from RepairPal by submitting false payroll information and diverting company funds for personal use. Depo. Ex. 54, ¶ 20. Shelton was indicted on or about August 15, 2023 in this Court, No. 3:23-cr-00258-JSC (the "Criminal Action"). *Id.* The Criminal Action included counts of fraud and tax evasion. *Id.*

**C. Scottsdale Acknowledged Its Duty to Defend Shelton and Insisted on Controlling His Defense of the Criminal Action.**

Shelton retained Paul Hastings, LLP to represent him in the Criminal Action. Depo. Ex. 56 at 05655-56. On September 25, 2023, Paul Hastings reported the Criminal Action to Scottsdale under the Policy. Eagle Decl., Ex. J at 0005. It is undisputed that Shelton was an Insured under the Policy. ECF 18, 11:1; ECF 21, 3:15-16. On October 2, 2023, Scottsdale acknowledged its duty to defend Shelton in the Criminal Action, reserved certain rights, waived its right to control "a settlement or plea resolution," and asserted that it had the right to control Shelton's defense, including the appointment of defense counsel. Depo. Ex. 2 at 0521. Shelton responded that he had a right to independent counsel because of conflicts of interest between him and Scottsdale, as well as his constitutional rights, and he requested that Scottsdale consent to Paul Hastings as his defense counsel. Depo. Ex. 3 at 0524-0526; *see also* Depo. Exs. 1-10. Shelton asserted that Scottsdale had not waived its right to deny coverage and seek recoupment of defense costs under the Conduct Exclusion, and that this created a conflict under California law. *Id.* Scottsdale then rejected Shelton's request for independent counsel again, expressly waiving its rights under the Conduct Exclusion and reiterating that it would control Shelton's defense, including appointment of defense counsel. Depo. Ex. 5 at 0530-0531; Ex. E at RFA 8, 10. Attempting to resolve the impasse, Shelton offered to accept the billing rates charged by Scottsdale's appointed defense counsel in exchange for Scottsdale's consent to Paul Hastings. Depo. Ex. 6 at 0533. Scottsdale rejected Shelton's offer. Depo. Ex. 9 at 0585. After further negotiation and an agreement in principle over payment by Scottsdale to Shelton of a lump sum amount, Scottsdale sent Shelton a proposed settlement agreement. Depo. Ex. 9 at 0582. Shelton rejected the proposed settlement agreement because it included a release by him of RepairPal. Depo. Ex. 10 at 0621. Scottsdale refused to settle without a release for RepairPal

because ***"[t]o the extent that Mr. Shelton pursues litigation against RepairPal*** for indemnification ***or if RepairPal agrees to indemnify legal costs incurred by Mr. Shelton*** beyond those paid for by Scottsdale, and then seeks reimbursement for Scottsdale for those amounts, ***Scottsdale's policy could be further implicated*** which defeats the purpose of the proposed buyout to Mr. Shelton." Depo. Ex. 10 at 0622. RepairPal was not included in these negotiations, which were unsuccessful, and never received a copy of the proposed settlement agreement. Shaw Decl. ¶ 4.

**D. Shelton Sued RepairPal for Advancement and Indemnification in Delaware.**

Shelton demanded advancement and indemnification from RepairPal, and RepairPal refused. Eagle Decl., Ex. A (Shaw Depo at 61:18–62:11). After some further exchanges regarding allocation, Shelton demanded 75% advancement, and RepairPal offered to advance 24% of Shelton's Criminal Action defense costs. Depo. Ex. 57 at 05762. On February 29, 2024, Shelton sued RepairPal in the Court of Chancery of the State of Delaware, alleging that RepairPal was required to advance his Criminal Action defense costs under Delaware law, RepairPal's bylaws and an indemnification agreement dated February 24, 2020 ("Indemnification Agreement"). Depo. Ex. 62. Scottsdale has admitted that the Advancement Action constituted a Claim under the Policy that was made during the Policy Period, and that RepairPal complied with all Policy conditions in connection with the Advancement Action. Eagle Decl., Ex. E at RFA 16, 17; Ex. G at RFA 35.

**E. Scottsdale Controlled RepairPal's Defense in the Advancement Action Without Reserving Rights, and the Delaware Court Ordered RepairPal to Advance.**

Scottsdale assigned the same claims adjuster, Emil Soskin, who was handling Shelton's claim relating to the Criminal Action to handle RepairPal's claim relating to the Advancement Action, and Scottsdale treated the Criminal Action and Advancement Action as a single "Claim" under the Policy. Eagle Decl., Ex. B (Miano Depo at 63:24–65:23); Ex. C (Soskin Depo at 127:10–128:2). Scottsdale agreed to defend RepairPal in the Advancement Action, rejected RepairPal's request to use its own defense counsel at Fenwick and appointed the law firm Kennedys to defend RepairPal. Depo. Ex. 28 at 0379-0381; Eagle Decl. Ex. E at RFA 20, 21, 22; Shaw Decl., ¶ 7. This created a tripartite relationship, within which Kennedys reported to both RepairPal and Scottsdale, but Scottsdale controlled the defense. Eagle Decl., Ex. B (Miano Depo. at 137:11–23, 124:2–12). At the time Scottsdale rejected RepairPal's

request for consent to Fenwick, Scottsdale did not issue a reservation of rights letter or otherwise advise RepairPal of any limitations on coverage for a potential judgment in the Advancement Action, or any indemnification paid pursuant thereto. Depo. Ex. 28 at 0379-0381; Shaw Decl. ¶¶ 6-7. Scottsdale never advised RepairPal of a conflict of interest or that it had a right to independent counsel in the Advancement Action. *Id.*; Ex. E at RFA 23. RepairPal acceded to Scottsdale's insistence that Kennedys defend RepairPal in the Advancement Action. Shaw Decl., ¶ 7.

On May 9, 2024, after cross-motions for summary judgment had been fully briefed and just days before the hearing on them, Kennedys requested settlement authority from Scottsdale to offer up to 50% advancement to Shelton, and Scottsdale told Kennedys that it would not cover any amounts RepairPal might be ordered by the Delaware court to advance.  Depo. Ex. 29 at 02979. Specifically, Scottsdale responded that it was "up to repairpal [sic] what they want to offer or pay." Kennedys asked: "Just to clarify, will the advancement be paid under the policy?" Scottsdale responded "It will not. NO coverage for actual advancement." Depo. Ex. 29 at 02979. At the time, Scottsdale had not advised RepairPal there would be no coverage if the Delaware court ordered it to advance. Eagle Decl., Ex. C (Soskin Depo at 140:10–142:6); Ex. A (Shaw Depo at 108:17-110:1). Kennedys was "surprised" by this, and called RepairPal. *Id.*, Ex. A (Shaw Depo at 130:5-131:8). RepairPal was not provided that email. Kennedys told RepairPal only that Scottsdale "would not be advancing fees if [RepairPal] needed to advance them." *Id.* (Shaw Depo at 130:13-15). In fact, Scottsdale still had not issued a reservation of rights letter. Eagle Decl., Ex. C (Soskin Depo at 131:15–133:16). Scottsdale admits it should have issued a reservation of rights letter sooner, but failed to. Eagle Decl., Ex. C (Soskin Depo. at 148:23–149:23).

On May 13, 2024, at the hearing on the cross-motions for summary judgment, the Delaware court ruled that RepairPal was required to advance Shelton's defense costs relating to Counts One through Eight in the Criminal Action (for bank fraud, wire fraud and aiding and abetting), but not for Counts Nine through Twelve (for tax evasion), and to pay two-thirds of Shelton's "fees-on-fees" (i.e., fees Shelton incurred to pursue to the Advancement Action) and 100% of Shelton's fees in preparing the advancement submissions to RepairPal. Depo. Ex. 65. The Court stated that, to discern its reasoning, the parties should refer to their own briefs, and that what it stated on the record was "an overly simplified reasoning." Depo. Ex. 65 at 01759-1760 ("I've reviewed your briefs; but that's where we're headed and

that's where I've come out. …I'll ask you-all to negotiate the…order" memorializing this ruling).

Immediately after the hearing, Kennedys advised Scottsdale and RepairPal, separately, of the Delaware court's ruling. Depo. Ex. 66; Eagle Decl., Ex. D (Little Depo. 111:17-20). On May 21, before Kennedys finalized the stipulated order with Shelton's counsel, Scottsdale issued a "reservation of rights" letter to RepairPal, advising RepairPal ***for the first time*** of its coverage position with respect to the Advancement Action. Eagle Decl., Ex. 12 at 0639-0645 ("ROR"). In the ROR, Scottsdale belatedly stated that it would defend RepairPal in the Advancement Action (which Scottsdale had done several months earlier), appoint Kennedys as defense counsel (to which RepairPal had agreed several months earlier) and purported to reserve its rights to deny coverage based on the IvI Exclusion, Contract Exclusion, and definition of Loss (which it had never previously communicated to RepairPal). *Id.* at 0641-0644. While the Reservation of Rights asserted that "very little, if any coverage appears to be available for the Advancement Action under the Policy," it did not inform RepairPal there would be ***no*** coverage in the event the Delaware court ordered RepairPal to advance or even address the Delaware court's ruling over one week earlier. *Id.* at 0641. It only mentioned the Consent Clause in a footnote near its conclusion in a section addressing ***RepairPal's defense arrangement for the Advancement Action***. *Id.*, fn. 3. The footnote does not clearly reserve rights based on, much less state, that ***RepairPal would have no coverage*** for its court-ordered advancement obligations because of Shelton's alleged breach of the Consent Clause. *Id*. RepairPal was never told by Scottsdale, until shortly before this lawsuit was filed, that Scottsdale was taking the position there was no coverage for RepairPal's indemnification of Shelton. Eagle Decl., Ex. A (Shaw Depo. at 128:4-19); Shaw Decl. ¶ 6.

On June 3, 2024, the Delaware court entered the final stipulated Order ("Advancement Order"). Depo. Ex. 11. The Advancement Order states that RepairPal must advance defense costs and pay Fees-on-Fees under RepairPal's bylaws, the Indemnification Agreement and Delaware law. *Id*. Scottsdale has admitted that the Delaware Chancery Court ordered RepairPal to advance portions of fees incurred by Shelton in the Criminal Action. Eagle Decl., Ex. E at RFA 12.

**F. The Criminal and Advancement Actions Resolved In Shelton's Favor, RepairPal Indemnified Shelton, and Scottsdale Sued RepairPal.**

Kennedys negotiated a reduction of Shelton's defense costs and kept Scottsdale informed of the

negotiations. *Id.* & Depo. Ex. 46 at 2968-72. RepairPal paid Shelton over $6.4 million. Shaw Decl., ¶13. The Advancement Action was dismissed on December 12, 2025. Request for Judicial Notice, Ex. M. The Criminal Action resulted in a hung jury, and the court declared a mistrial. Depo. Ex. 42 at 0003. The government decided not to retry Shelton and dismissed the Criminal Action. *Id.* Again, Kennedys sent Scottsdale updates as to the events in and conclusion of the Criminal Action. Ex. Depo. Ex. 46 at 2790. Kennedys informed Scottsdale that any effort by RepairPal to claw back the Advanced Fees or avoid indemnifying Shelton was likely to fail and had recommended to RepairPal that it not attempt to do so. Depo. Ex. 46 at 2969. Scottsdale did not disagree.

In May 2025, after the Criminal Action concluded, RepairPal requested that Scottsdale cover its indemnification of Shelton. Depo Ex. 42. Instead of responding, Scottsdale filed this coverage action against RepairPal and Shelton for declaratory relief and breach of contract. ECF 1. RepairPal answered Scottsdale's complaint and filed counterclaims against Scottsdale for breach of contract, declaratory relief, and bad faith.[5] ECF 18. According to Scottsdale, the remaining policy limit is $4,761,402.47. Eagle Decl., Ex. F at Interrog. 20.

## IV. <u>ARGUMENT</u>

### A. RepairPal is Entitled to Coverage Under Both Insuring Clauses A.2 and A.3.

A "court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The insured has the initial burden of showing that the loss falls within the scope of the applicable policy's insuring agreement. *Aydin Corp. v. First State Ins. Co.*, 18 Cal. 4th 1183, 1188 (1998). RepairPal's indemnification of Shelton pursuant to the Delaware court's order is exactly what Insuring Clause A.2 was written to cover. Scottsdale completely ignores it, attempting to push the claim into Insuring A.3 because there are more coverage limitations. While unnecessary to RepairPal's claim because of Insuring Clause A.2's clear application, Insuring Clause A.3 also separately applies.[6]

---

[5] RepairPal's claim for bad faith is not at issue in this motion.

[6] Nothing in the Policy prohibits more than one Insuring Clause from affording coverage for the same Loss—the Policy anticipates this result. *See* Policy, General Terms & Conditions, § C.2 as amended by End. 41 ("***In the event that any Claim*** or more than one Claim arising for Interrelated Wrongful Acts ***shall be covered, in whole or in part, under two or more Insuring Clauses*** …").

### 1. *Insuring Clause A.2 Covers RepairPal's Indemnification of Shelton.*

The undisputed facts fit squarely in Insuring Clause A.2. It broadly covers "Loss of the Company" for which the Company has indemnified, or was permitted to indemnify (even if it did not do so), a Director or Officer and which the Director or Officer became obligated to pay by reason of a Claim ("criminal proceeding commenced by . . . indictment") made during the policy period for Wrongful Acts ("error, omission . . . neglect, breach of duty or act") allegedly committed before the end of the policy period. Depo. Ex. 26, D&O Coverage Section § A.2 and End. 28. Scottsdale has admitted that Shelton was a Director or Officer, the Criminal Action was a Claim against Shelton, and the Criminal Action was initiated against Shelton during the Policy Period for Wrongful Acts he allegedly committed before the end of the applicable policy period. Eagle Decl., Ex. E. Scottsdale also has admitted that the Delaware court ordered RepairPal to advance certain of Shelton's defense costs in the Criminal Action. Eagle Decl., Ex. E at RFA 12, 24. RepairPal complied with the Delaware court's order and paid the Advanced Fees to Shelton's defense counsel on Shelton's behalf (Depo. Ex. 46 at 2968), the Criminal Action ended without a conviction (Depo Ex. 42), and RepairPal did not claw back the Advanced Fees from Shelton (Depo. Ex. 46 at 02968). Finally, it is undisputed that Scottsdale's appointed defense counsel, Kennedys, informed Scottsdale that RepairPal likely would not be able to claw back any of the amount it paid. Depo. Ex. 46 at 2968–2971. RepairPal agreed to a final amount of indemnification (Depo. Ex. 46 at 02968), and Scottsdale never disagreed or objected.

In other words, the undisputed facts prove more than is required to establish coverage under Insuring Clause A.2. RepairPal was not just permitted—***it was required by court order***—to indemnify Shelton for "Costs, Charges and Expenses" he became legally obligated to pay by reason of a "Claim" made in the policy period for "Wrongful Acts" he allegedly committed before the policy period ended. Indeed, RepairPal advanced Shelton's fees pursuant to the Delaware court's order and, ultimately, indemnified him. That is ***exactly*** what D&O insurance is designed to cover.[7]

---

[7] "[C]orporate reimbursement or Side B coverage… protects the corporation from losses incurred by the corporation itself as a result of having to indemnify its directors and officers for alleged misconduct. The Side B insuring clause is triggered by indemnification that is 'permitted or required,' covering both mandatory and permissive indemnification." Plitt et al., 2 Practical Tools for Handling Insurance Cases § 14:12 (2025). A "D & O policy … protects the corporation from

#### 2. *Insuring Clause A.3 Covers RepairPal's Payments to Shelton.*

Insuring Clause A.3 covers Loss ("damages, judgments, settlements") of RepairPal which it became legally obligated to pay by reason of a Claim made against it during the Policy's policy period for any Wrongful Act ("error, omission . . . neglect, breach of duty or act") allegedly committed or attempted by RepairPal before the end of the Policy Period. Depo. Ex. 26, D&O Coverage Section, § A.3. The same undisputed facts set forth *infra*, Section IV.A.1, that trigger Insuring Clause A.2 also fit within Insuring Clause A.3. Scottsdale admitted as much by assuming, and insisting on controlling, RepairPal's defense of the Advancement Action while failing to reserve its rights. Eagle Decl., Ex G (RFA 20, 21, 22, 23), Ex. C (Soskin Depo at 120:15–122:12).

### B. Scottsdale Cannot Meet its Burden of Proving that a Policy Condition or Exclusion Eliminates Coverage for RepairPal's Indemnification of Shelton.

To avoid summary judgment for RepairPal, Scottsdale must meet its burden of proving that an exclusion or breach of a condition in the Policy conclusively eliminates coverage. *See Garvey v. State Farm Fire & Cas. Co.*, 48 Cal. 3d 395, 406 (1989) (insurer must prove exclusion applies to avoid coverage duty); *Masonite Corp. v. Great Am. Surplus Lines Ins. Co.*, 224 Cal. App. 3d 912, 922 (1990) (burden is on the insurer to prove that breach of a policy condition eliminates coverage because it functions as an exculpatory clause). Scottsdale fails to—and cannot—meet its burden.

#### 1. *Shelton's Selection of Counsel Does Not Eliminate RepairPal's Coverage.*

a. Shelton's Alleged Breach of the Consent Clause is Irrelevant.

Shelton's alleged breach of the Consent Clause by refusing Scottsdale's appointed defense counsel and proceeding to use Paul Hastings, has no bearing on RepairPal's coverage. Both Insuring Clauses A.2 and A.3 cover "Loss of the Company." Accordingly, the "Loss" that matters is the Company's indemnification liability or "damages, judgments, settlements." That is what RepairPal paid here in compliance with the Delaware court's order and with Scottsdale's consent where required. *See infra*, Section IV.A.1. Scottsdale admits that RepairPal complied with the Consent Clause. Eagle Decl., Ex.G at RFA 33, 35, 36.

---

some of the sizable losses it could incur because of its indemnification of its officers and directors against liability…" J. Olson et al., Dir. & Off. Liab § 12:1 (2025).

In arguing that Shelton's use of his own defense counsel without Scottsdale's consent eliminated RepairPal's coverage, Scottsdale misconstrues the Consent Clause by reading it broadly and without reference to the rest of the Policy. The Consent Clause states: "The Insureds agree not to . . . incur any Costs, Charges and Expenses . . . without the prior written consent of the Insurer, such consent not to be unreasonably withheld. The Insurer shall not be liable for any . . . Costs, Charges and Expenses . . . to which it has not consented." Decl. Ex. 26, D&O Coverage Section § F.3. Conspicuously absent from the Consent Clause is a clear statement that Scottsdale shall not be liable for ***Loss of the Company*** in indemnifying a Director or Officer's non-consented Costs, Charges and Expenses under Insuring Clause A.2 or in paying "damages, judgments, settlements" under Insuring Clause A.3. *See* Cal. Civ. Code § 1641 (contracts must be read as a whole). Had Scottsdale intended to eliminate coverage for that situation, it should have stated it expressly and clearly. *Pepper Indus., Inc. v. Home Ins. Co*., 67 Cal. App. 3d 1012, 1019 (Ct. App. 1977) ("If Home also intended this exclusion to apply … its duty was to state and define such exclusion in a 'conspicuous, plain and clear' manner."); *Safeco Ins. Co. of Am. v. Robert S.*, 26 Cal. 4th 758, 763–65 (2001) ("we cannot read into the policy what [the insurer] has omitted."). To the extent the Consent Clause could be broadly interpreted to do so, it must not be—it must be construed narrowly and in favor of coverage. *Kunin v. Benefit Trust Life Ins. Co.*, 910 F.2d 534, 540 (9th Cir. 1990) ("the insurer should be expected to set forth any limitations on its liability clearly …; if it fails to do this, it should not be allowed to take advantage of the very ambiguities that it could have prevented with greater diligence"); *Dart Indus., Inc. v. Com. Union Ins. Co.*, 28 Cal. 4th 1059, 1071 (2002) (the insurer bears the burden to prove the claim is "specifically excluded," whether the language is found in exclusions, limitations, or conditions "it is the *function* served …not the location of language in an insurance policy, that is determinative.") (quotes/alterations omitted).

A reasonable reading of the Consent Clause in this context is that Shelton's breach would eliminate coverage for him (*i.e.*, under Insuring Clause A.1), but not RepairPal, as RepairPal did not ***incur*** any Costs, Charges and Expenses without Scottsdale's consent. *See, e.g., E.M.M.I. Inc. v. Zurich Am. Ins. Co.*, 32 Cal. 4th 465, 470 (2004) ("Language in an insurance policy is 'interpreted as a whole, and in the circumstances of the case'"). D&O insurance for the Company's indemnification obligation would be empty were there such a limitation. The express purpose of Insuring Clause A.2 is to cover

amounts RepairPal is "***required or permitted***" to indemnify its Directors and Officers. Per the Indemnification Agreement, RepairPal did not have any right to control or even influence Shelton's defense of the Criminal Action, including his selection of defense counsel because of the obvious adversity between them (Shelton was accused of stealing money from RepairPal). Depo. Ex. 52 at 3484, ¶ 2(f) (individual selects counsel when he or she may have a conflict of interest with company); *see also, e.g.*, *Pontone v. Milso Industries Corp.*, 100 A.3d 1023 (Del. Ch. 2014) (individual entitled to select counsel when company advances defense costs and there is a conflict of interest). The Delaware court did not state or even suggest that RepairPal had any control over Shelton's defense—it ordered advancement of Paul Hastings' fees. Depo. Ex. 11, Advancement Order. If RepairPal was ***required*** to advance Shelton's fees and had no right to select Shelton's defense counsel or control his defense, how could its coverage depend on Shelton's compliance with Scottsdale's demands for control? It would be nonsensical and defeat the purpose of the insurance that Scottsdale sold to RepairPal to allow Shelton, whom RepairPal was required to indemnify but did not control, to eviscerate RepairPal's coverage by selecting his own defense counsel. *See, e.g., E.M.M.I.*, 32 Cal. 4th at 470.

b. Shelton did not Breach the Consent Clause; Scottsdale Did.

Shelton did not breach the Consent Clause because: (1) California law entitled Shelton to independent defense counsel in the Criminal Action; and (2) even if not, Scottsdale's withholding of consent for Shelton's request for independent counsel was unreasonable. In other words, it was ***Scottsdale***, not Shelton, who breached the Policy. *Jamestown Builders, Inc. v. Gen. Star Indem. Co.*, 77 Cal. App. 4th 341, 348 (1999) ("The no-voluntary-payments provision is superseded by an insurer's antecedent breach of its coverage obligation.").

*(1) California Law Required Scottsdale to Allow Shelton to Use Independent Counsel in the Criminal Action.*

Shelton was entitled to independent counsel because of at least two conflicts of interest: (1) Scottsdale had no financial interest in the outcome of the Criminal Action, whereas Shelton faced prison time and millions in uncovered restitution and fines; and (2) Scottsdale's two insureds—Shelton and RepairPal—were actively adverse to each other, and Scottsdale placed itself squarely in the middle of their indemnification dispute while attempting to control both their defenses. "In actions in which the

insurer lacks an economic motive for a vigorous defense of the insured, ***or*** in which the insurer and insured have conflicting interests, ***the insurer may not compel the insured to surrender control of the litigation***." *Tomerlin v. Canadian Indem. Co.*, 61 Cal. 2d 638, 648 (1964).

In *Tomerlin*, the California Supreme Court held that an insurer could not insist on continued control over its insured's defense when it had limited exposure to a judgment and therefore lacked sufficient financial incentive to mount a meaningful defense. The insured faced potential liability far exceeding the applicable policy limit, meaning any adverse judgment would fall mostly on the insured instead of the insurer. *Id*. at 647-48. The Court recognized that the insurer's interests diverged from the insured's—the insurer was motivated solely to minimize its own defense expenditures while the insured faced catastrophic personal liability. *Id*. ***The California Supreme Court concluded that this conflict of interest required the insurer to allow the insured to use independent defense counsel***. *Id*. at 648-49. The divergence of interests is even starker here than that in *Tomerlin*, which involved only potential civil liability, because Shelton's liberty was at stake. Because Scottsdale had "denied all liability under the policy, its sole economic motive for prosecuting a vigorous defense had been eliminated." *Tomerlin*, 61 Cal. 2d at 674; *see also* Eagle Decl., Ex. B (Miano Depo. at 96:14–98:9) (Scottsdale admitting same). In stark contrast, Shelton faced a potential prison sentence, as well as uncovered restitution and fines, and thus had a strong interest in spending what was reasonably necessary to avoid a conviction. Accordingly, Scottsdale's position rests on the "***erroneous assumption"*** that it could exclusively control the defense even though it lacked an "economic interest in its outcome." *Tomerlin*, 61 Cal. 2d at 648; *see also Wint v. Fid. & Cas. Co.*, 9 Cal. 3d 257, 263 (1973) ("a defense by an insurer whose policy has a limit far below the amount claimed cannot be equated to the defense of an insurer who stands to lose 10 times as much as to the insurer who defends.").

Scottsdale argues this conflict did not require independent counsel because Section 2860 ***only*** refers to the situation in which defense counsel can influence the resolution of a coverage defense in the underlying lawsuit. ECF 48 at 22, citing Cal. Civ. Code § 2860. This misstates California law. Section 2860 codified the rule set out in the California Court of Appeal decision of *San Diego Navy Fed. Credit Union v. Cumis Ins. Soc'y, Inc.*, 162 Cal. App. 3d 358, 364 (1984), which relied on *Tomerlin* and involved a conflict of interest situation that commonly arises in the duty-to-defend context—"the insurer

may be subject to substantial temptation to shape its defense so as to place the risk of loss entirely on the insured" when the insurer has reserved its right to deny coverage for damages based on intentional conduct when the insured might also be found liable for negligence. *San Diego Navy Fed. Credit Union v. Cumis Ins. Soc'y, Inc.*, 162 Cal. App. 3d 358, 364 (1984) (*quoting Tomerlin*, 61 Cal. 2d 638).

That is but one potential conflict scenario, however, that can trigger an insured's right to independent counsel. California courts have subsequently reiterated that the *Tomerlin* and *Cumis*' analysis, which is rooted in defense counsel's ethical obligations and duties of loyalty, can require independent counsel outside of the typical *Cumis* and Section 2860 scenario. *See, e.g.*, *James 3 Corp. v. Truck Ins. Exch*., 91 Cal. App. 4th 1093, 1101 (2001) ("some of the circumstances that may create a conflict of interest requiring independent counsel include" (1) the 2860 scenario; "(2) where the insurer insures both the plaintiff and the defendant…and (5) ***any other situation*** where an attorney …finds that his or her "representation of the one is rendered less effective by reason of his [or her] representation of the other."); *Long v. Century Indem. Co.*, 163 Cal. App. 4th 1460, 1472 (2008) ("2860 does not purport to address any and all conflicts that might arise;" "subdivision (b) exists ***because the interests of the insurer and its insured diverge***… It is not, however, the only circumstance in which *Cumis* counsel may be required."). Accordingly, Scottsdale breached its duty to defend him by refusing to acknowledge the conflict and permit Shelton to use Paul Hastings.

Shelton was also to entitled to independent counsel because Scottsdale's two insureds—RepairPal and Shelton—were obviously adverse to each other. The Criminal Action alleged Shelton stole from RepairPal and Shelton sued RepairPal in the Advancement Action, and they were in an indemnity dispute. *See, e.g., L.A. Terminals, Inc. v. United Nat'l Ins. Co.*, 608 F. Supp. 3d 968, 980 (C.D. Cal. 2022) *aff'd in part* 2025 WL 1024392 (9th Cir. Apr. 7, 2025) (conflict created by insurer's defense of "direct litigation adversaries" for six months without segregating the files was not cured by subsequently splitting the claim files). Nonetheless, Scottsdale asserted that it had the right to control both their defenses while both the Criminal Action and the Advancement Action were ongoing. Eagle Decl., Ex. E, at RFA 8, 11, 20–22. Worse, the same Scottsdale claims adjuster—Emil Soskin—was handling both insureds' insurance claims, treating them as the same "Claim" under the Policy, and personally involved in negotiations between the two insureds over the indemnity dispute. Eagle Decl.,

Ex. B (Miano Depo at 63:16–65:23, 197:17–198:11); Depo Ex. 18 at Interrog. 2.

Highlighting the extent of the conflict, Mr. Soskin and Scottsdale's outside coverage counsel separately negotiated with Shelton about his defense counsel arrangement (Depo. Exs. 1–10)—knowing that Shelton was seeking indemnification from RepairPal—without RepairPal's participation or any disclosure to RepairPal about the potential impact of those negotiations on RepairPal's right to coverage. Depo. Ex. 9 at 0582. After those negotiations failed and Shelton sued RepairPal, Scottsdale refused to give the defense counsel it forced RepairPal to use (Kennedys) settlement authority when requested all while knowing, but failing to directly inform RepairPal, that Scottsdale was going to deny coverage for any award against RepairPal by the Delaware court in the Advancement Action. Eagle Decl., Ex. 29. Even Scottsdale eventually acknowledged this conflict of interest, but by then it was too late. After the Delaware court had ordered RepairPal to advance Shelton's defense costs and the Criminal Action had concluded, Scottsdale refused to share with RepairPal certain correspondence it had exchanged with Shelton, stating: "Given that … RepairPal and Shelton were adverse in this matter and Shelton faced criminal liability, Scottsdale is not comfortable sharing any additional correspondence exchanged between Shelton … and Scottsdale … for concern of potentially disclosing potentially privileged or confidential information." Depo. Ex. 15 at 0677; Eagle Decl., Ex. B (Miano Depo. at 174:19–177:13).

Scottsdale's failure to separate its claims handling files and continued assertion of the right to "control" the defenses of ***both*** Shelton and RepairPal despite their conflict breached the Policy. *See, e.g., L.A. Terminals, Inc.*, 608 F. Supp. 3d at 980; *L.A. Terminals, Inc.*, 2025 WL 1024392, at *2 (affirming ruling insured was entitled to independent counsel; defense of two parties seeking damages from each other does not ***necessarily*** create a conflict, a conflict exists where there is a temptation to shift the loss to the insured (*citing Tomerlin*)); Croskey et al., Cal. Practice Guide: Ins. Litigation § 7:790a (Rutter, 2026) (Comment) ("An insurer's reservation of rights as to one of several coinsureds … may also exacerbate conflicts among codefendants. …where the insurer has reserved the right to deny coverage … coinsureds may … seek to shift liability among each other").

Scottsdale now argues that, despite its June 2025 admission above, there was no conflict because, as of the date the Advancement Action was filed, Scottsdale owed no further obligation to Shelton because he had already breached the Consent Clause. This is a fallacy. Scottsdale conveniently ignores

that Shelton was asserting indemnity rights against RepairPal that would trigger RepairPal's coverage under Insuring Clause A.2 all along. Depo. Ex. 10. It also ignores that Scottsdale treated the Criminal Action against Shelton and Shelton's Advancement Action against RepairPal as a single Claim all along. By Scottsdale's own admission, there was a direct conflict between Shelton and RepairPal. Eagle Decl., Ex. B (Miano Depo at 125:12–24); Ex. C (Soskin Depo at 187:25–189:14); Depo. Exs. 9, 10. Scottsdale inserted itself into the middle of its insureds' adversity by insisting on control of both their defenses, and negotiating between them, all while knowing (but not disclosing to RepairPal) that it would refuse to pay any of Shelton's defense costs if RepairPal was ordered to indemnify them.

*(2) Scottsdale's Refusal to Consent was Unreasonable.*

Even if Shelton was not entitled to independent counsel under California law, Scottsdale breached the Consent Clause when it refused to provide consent without any reasonable basis. D&O Coverage Section § F.3 ("such consent not to be unreasonably withheld"). Scottsdale did not have "carte blanche…to refuse all reasonable requests" for consent; rather, the "unreasonably withheld" qualifier functions as "a check on the insurer's veto power." *SI Venture Holdings, LLC v. Catlin Specialty Insurance*, 118 F. Supp. 3d 548, 553–54 (S.D.N.Y. 2015).[8] When an indemnitor's "interpretation of the counsel selection provision effectively allows it to escape its ultimate contractual obligation to indemnify … the Court must inquire into the reasonableness of that interpretation in light of the indemnification agreement's purpose." *Chamison v. HealthTrust, Inc.—The Hospital Co.*, 735 A.2d 912 (Del. Ch. 1999) (finding HealthTrust acted unreasonably in bad faith by trying to force acceptance of an inferior defense, and Chamison had not waived indemnification rights by refusing such an unreasonable demand); *Air & Liquid Sys. Corp. v. Allianz Underwriters Ins. Co.*, No. CIV.A. 11-247, 2013 WL 5436934, at *54 (W.D. Pa. Sept. 27, 2013) (rejecting insurer's claim it could withhold consent for any or no reason even in the absence of "not to be unreasonably withheld" clause). Scottsdale cannot arbitrarily and in furtherance of its own interests refuse to consent to a reasonable defense arrangement. *Archdale v. Am. Internat. Specialty Lines Ins. Co.*, 154 Cal. App. 4th 449, 463 (2007); *Comunale v. Traders & Gen. Ins. Co.*, 328 P.2d 198, 201 (Cal. 1958). The Court can rule that Scottsdale's refusal to consent was unreasonable as a

[8] *Aug. Ent., Inc. v. Phil. Indem. Ins. Co.*, 146 Cal. App. 4th 565, 577 (2007) (courts often look to federal and out-of-state cases due to limited California D&O caselaw).

matter of law because the material facts are undisputed. *Skanska USA Civ. W. Cal. Dist. Inc. v. Nat'l Interstate Ins. Co.*, 551 F. Supp. 3d 1010, 1031 (S.D. Cal. 2021); *Paulfrey v. Blue Chip Stamps*, 150 Cal. App. 3d 187, 196 (Ct. App. 1983).[9] It is undisputed that: Scottsdale had no interest in the outcome of the Criminal Action; Shelton had a strong interest in vigorously defending the Criminal Action to avoid jail time, restitution and fines; Paul Hastings was qualified to defend Shelton in the Criminal Action; and ***Paul Hastings offered to accept Scottsdale's panel billing rates (making Shelton's selected counsel no more expensive to Scottsdale than Scottsdale's appointed panel counsel)***.[10] Depo. Ex. 6 at 0533. It was unreasonable to insist on controlling Shelton's defense and selecting his defense counsel given his vital stake in the outcome of the Criminal Action, Scottsdale's lack thereof, and Paul Hastings' offer to accept panel rates.

But Scottsdale acted as if it had "carte blanche" and could arbitrarily insist on the right to appoint counsel and control Shelton's defense. Scottsdale never provided a reason to Shelton for its refusal to provide consent, other than its incorrect belief that California law allowed it do so. During discovery in this coverage action, Scottsdale testified to only one more hollow basis: to prevent improbable expenditures like first class airfare and five-star hotel stays. Eagle Decl., Ex. B (Miano Depo at 96:14–97:12.) There is no evidence that Paul Hastings, after offering to accept panel counsel rates, would have refused to limit its charges for coach airfare and reasonably priced hotels. In fact, there is no evidence that Scottsdale ever asked it to do so. (Had Paul Hastings attempted to charge such costs, Scottsdale could have rejected them as being unreasonable. *See Dynamic Concepts, Inc. v. Truck Ins. Exch.*, 61 Cal.App.4th 999, 1010 fn.9 (1998)). Scottsdale's failure to acknowledge Shelton's right to independent counsel and unreasonable withholding of consent breached its duty to defend and the Consent Clause, making Scottsdale liable for the total cost of Shelton's defense up to the applicable policy limit. *Stalberg v. Western Title Ins. Co.*, 230 Cal. App. 3d 1223, 1233 (1991) (breach of the duty to defend subjects the breaching insurer "to liability for the insureds' full attorney's fees and costs incurred thereafter with other

---

[9] The facts are undisputed. However, if the Court finds there is a disputed fact as to the reasonableness of Scottsdale's refusal to consent, this alone would preclude summary judgment in Scottsdale's favor on its breach of contract claim, as well as go to RepairPal's bad faith claim.

[10] Even absent Paul Hastings offer to accept panel counsel rates, it was Scottsdale's right to pay its ordinary panel rates. Cal. Civ. Code § 2860.

counsel."); *Jamestown Builders, Inc.*, 77 Cal. App. 4th at 348. Scottsdale's position that Shelton breached the Consent Clause and thereby vitiated RepairPal's coverage fails.

**2. *No Exclusions Eliminate RepairPal's Coverage.***

a. <u>The IvI Exclusion Does Not Eliminate RepairPal's Coverage.</u>

Scottsdale fails to meet its burden of proving that the IvI Exclusion precludes coverage for RepairPal's Loss. RepairPal's Loss falls squarely into its Exception ii., which restores coverage for Claims "***brought or maintained by any Insured*** in the form of a cross-claim, third-party claim ***or other proceeding for*** contribution or ***indemnity which is part of, and directly results from a Claim*** that is covered by this Coverage Section." Depo. Ex. 26, D&O Coverage Section, § C.(e). Exception ii. applies because the Advancement Action was an "other proceeding for… indemnity," which was part of, and directly resulted from, a Claim [i.e., the Criminal Action]. *Id*. Scottsdale argues that the Advancement Action was "not brought in the form of a cross-claim, third-party claim or proceeding" ***that was part of*** the Criminal Action. ECF 48 at 29. That mischaracterizes Exception ii and would make it apply more narrowly than its actual language allows. *See MacKinnon v. Truck Ins. Exch.*, 31 Cal. 4th 635, 648 (2003) (exclusions must be interpreted narrowly, and exceptions to exclusions are read broadly, in favor of coverage). Scottsdale's interpretation would unreasonably limit coverage to indemnity claims brought ***in the same proceeding***, i.e., the Criminal Action.[11] Exception ii. expressly restores coverage for indemnity claims brought in an "other proceeding" so long as it is part of and directly results from the same "Claim." Courts will not render contract language superfluous, but rather seek to harmonize all provisions. *See Mirpad, LLC v. Cal. Ins. Guar. Assn.*, 132 Cal. App. 4th 1058, 1072 (2005); Cal. Civ. Code § 1641. Scottsdale admitted the Criminal Action and the Advancement Action were part of the same Claim, and it treated them as such. Eagle Decl., Ex. B (Miano Depo at 63:20–65:23). Scottsdale also argues that the Claim was not "covered by this [D&O] Coverage Section." That is belied by the facts that Scottsdale agreed to defend Shelton in the Criminal Action and RepairPal in the Advancement Action. Scottsdale would not have done so had the Claim not been covered by the D&O Coverage Section. Scottsdale contends that, ***after*** it had acknowledged its duty to defend the Criminal Action,

[11] Scottsdale's interpretation also ignores that it was not possible for Shelton to sue for indemnity ***in*** the Criminal Action. Moreover, coverage cannot depend on the plaintiff's choice of forum.

Shelton breached the Consent Clause and therefore it was no longer a covered Claim. However, Shelton asserted his indemnity claim during the negotiations over defense counsel and, even if he had only asserted it afterward, Exception ii. contains no such temporal element. Shelton's Criminal Action defense was covered by the Policy's D&O Coverage Section, as Scottsdale acknowledged by agreeing to defend him against it. Interpreting the IvI Exclusion to eliminate coverage here would turn the D&O coverage on its head and thwart the reasonable expectations of the insured. "[A]ny ambiguity or uncertainty in an insurance policy is to be resolved against the insurer" and in a way that fairly achieves the objective of covering "the loss to which the insurance relates." *Reserve Ins. Co. v. Pisciotta*, 30 Cal. 3d 800, 807-08 (1982).

b. <u>The Contract Exclusion Does Not Eliminate RepairPal's Coverage.</u>

Scottsdale also improperly reads the Contract Exclusion broadly and out of context. Exclusions and limitations on coverage are "subjected to the closest possible scrutiny." *Haynes*, 32 Cal. 4th at 1212. They must be "clear and unmistakable," and the insurer is responsible for drafting such clauses so that they are "conspicuous, plain and clear." *Id.* at 1204, 1212.

***First***, the Policy states that the Contract Exclusion does not apply to Insuring Clause A.2. Depo. Ex. 26, D&O Coverage Section, § C.2. As a result, RepairPal's coverage under Insuring Clause A.2 applies even if RepairPal's liability to Shelton was contractual. ***Second***, as Scottsdale acknowledges, the Contract Exclusion does not apply to Loss under Insuring Clause A.3 "to the extent the Company would have been liable in the absence of such contract or agreement." ECF 48 at 12. Scottsdale attempts to narrowly interpret the Delaware Court's oral ruling from the bench, arguing that the Court "specifically" found that the ***only*** reason it was ordering indemnification was "due to RepairPal's obligations under the Indemnification Agreement." ECF 48 at 26. In fact, the Court advised the parties to look to their papers for the reasoning for the decision, but stated that "to the extent some reasoning is warranted here, I view the indemnification agreement issue to be very broad." Depo. Ex. 65. The Court did not hold there was not ***also*** an advancement obligation under the bylaws, or Delaware law, or to what extent; nor did the Court's subsequent order limit the holding to just indemnification under the indemnity agreement. Rather, the Delaware court's final signed Order states that Shelton sought advancement under Delaware law, the bylaws and the Indemnity Agreement, the court heard argument and ordered RepairPal to

advance Shelton's expenses for certain counts (and not others), and that RepairPal was required to advance attorneys' fees reasonably incurred. Depo Ex. 11 ("Order") at 1-2. Scottsdale's attempt to broaden the Contract Exclusion to include the very risk that the policy is designed to cover is illogical and inconsistent with the purpose of the coverage. The Ninth Circuit has rejected the argument that because reimbursement was made pursuant to an indemnity agreement, it was not ***also*** made pursuant to the company's bylaws. *Slottow v. Am. Cas. Co. of Reading, Penn.*, 10 F.3d 1355, 1358 (9th Cir. 1993) (in D&O coverage, courts "look to the [insured's] bylaws to determine whether [the insured] was required or permitted to indemnify [its director or officer]; if it was, ***then [the insurer] was obligated to reimburse the [insured]***.") ***Third***, the Contract Exclusion only applies to a "breach of any contract or agreement." RepairPal's bylaws stated RepairPal would indemnify officers "to the maximum extent and in the matter permitted by" Delaware law. Depo. Ex. 50 at 3472. The Delaware court's Order did not award damages for "breach of contract or agreement." It declared the scope of RepairPal's advancement obligation and ordered RepairPal to comply. Depo Ex. 11 at 1-2. At the time of the Order, the Criminal Action was still relatively new, so its effect was mostly prospective—ordering RepairPal to pay defense costs that Shelton would incur in the future. RepairPal complied, and over time paid Shelton approximately $6.4 million. Shaw Decl. ¶ 13.

c. <u>RepairPal's Indemnification of Shelton Constitutes Covered "Loss" for a "Wrongful Act" under Insuring Clause A.3.</u>

Scottsdale's contention that RepairPal's indemnification of Shelton does not constitute insurable "Loss" for a "Wrongful Act" because it was required by contract or court order is meritless. Again, Scottsdale's argument does not apply to Insuring Clause A.2. As to Insuring Clause A.3, RepairPal's alleged "refusal to advance" fees was an "error, omission, …neglect, breach of duty or act" and, thus, a "Wrongful Act" within the meaning of the Policy. Depo Ex. 26, D&O Coverage Section § B(9). RepairPal's payments to Shelton clearly fall within the Policy's definition of "Loss," which includes "damages, judgments, settlements… and Costs, Charges and Expenses." *Id.* at § B.7. Scottsdale cannot demonstrate that RepairPal's indemnification payments are uninsurable under California law. Indeed, indemnity obligations to directors and officers are the very risk that D&O insurance was designed to cover. *See* fn. 6, supra. According to Scottsdale, any time the scope of an indemnity obligation is

Farella Braun + Martel LLP
One Bush Street, Suite 900
San Francisco, California 94104
(415) 954-4400

disputed, the Company risks losing all coverage: the Company's indemnity obligation that is covered by Insuring Clause A.2 suddenly transforms into an uninsurable breach of contract once a court is involved.

### 3. *Scottsdale Waived its Right to Deny Coverage to RepairPal and is Estopped from Doing So.*

Scottsdale waived its right to rely on Shelton's (alleged) breach of the Consent Clause by accepting RepairPal's defense of the Advancement Action, denying RepairPal's request for independent counsel, and never reserving any rights until after the Delaware court ordered RepairPal at the summary judgment hearing to advance Shelton's defense costs. Waiver is the voluntary and intentional relinquishment of a known right, which can be express or implied from conduct, and failure to reserve rights can be deemed a waiver. "[I]f a liability insurer ***with knowledge of a ground of forfeiture or noncoverage*** … ***assumes and conducts the defense*** of … the insured***, without disclaiming liability and giving notice of its reservation of rights***, it is ***thereafter precluded … from setting up such ground of forfeiture or noncoverage***." *Miller v. Elite Ins. Co*., 100 Cal. App. 3d 739, 754 (1980). It is undisputed that Scottsdale did not issue a reservation of rights letter to RepairPal for nearly three months, until after the court had issued its ruling from the bench. Scottsdale was aware of Shelton's alleged breach of the Consent Clause and, nonetheless, unconditionally assumed RepairPal's defense in the Advancement Action without reserving rights, going so far as to require RepairPal to use Scottsdale's appointed defense counsel despite RepairPal's request to use its own selected counsel. Scottsdale is therefore precluded from relying on "policy provisions which would otherwise defeat coverage." *Id.* Scottsdale's own actions vis-à-vis Shelton confirm its intentional waiver. Scottsdale argues that because it did not mention the criminal conduct exclusion or generally reserve its rights in its initial reservation of rights letter to Shelton on October 2, 2023, it had waived its right to rely on the criminal conduct exclusion to deny coverage to Shelton. ECF 48 at 23. Scottsdale's claims adjuster, Emil Soskin, testified that Scottsdale in fact waived its rights with respect to the criminal conduct exclusion in this manner. Eagle Decl., Ex. B (Soskin Depo at 105:23 – 106:25). It only subsequently clarified "in an abundance of caution" that it was expressly waiving that right. ECF 48 at 22. By the same logic, then, Scottsdale's failure to reserve any rights when it assumed RepairPal's defense was a waiver.

The same facts also support estoppel here. "An estoppel *may* arise from silence where there is a

duty to speak[,]" and the California Fair Claims Settlement Practices regulations impose a duty to speak. *Spray, Gould & Bowers v. Assoc. Internat. Ins. Co.*, 71 Cal. App. 4th 1260 (1999). Insurers must disclose to the insured all provisions of an insurance policy that may apply to the claim, and shall not misrepresent or conceal other provisions which may apply to the claim presented. Cal. Code Regs. tit. 10, § 2695.4. Failing to allow independent counsel while failing to advise the insured of the potential absence of coverage rises to the level of a misrepresentation creating an estoppel. *Tomerlin*, 61 Cal. 2d at 648; *Certain Underwriters at Lloyd's of London v. Pac. Sw. Airlines*, 786 F. Supp. 867, 871–73 (C.D. Cal. 1992). Detrimental reliance can be established for purposes of estoppel by a showing of a substantial delay in asserting the basis for a reservation of rights, a potential conflict, and the failure to provide independent counsel. *See, e.g., Miller*, 100 Cal. App. 3d at 755 ("the insurer's unconditional defense … constitutes a waiver of the terms of the policy and an estoppel of the insurer to assert such grounds"); *Stonewall Ins. Co. v. City of Palos Verdes Estate*s, 46 Cal. App. 4th 1810, 1839 (1996). ("[b]y not reserving its rights, [the insurer] placed the counsel it has selected in a conflict of interest position" had the reservation been asserted the insured "would have been entitled to separate counsel").[12]

Scottsdale's assumption of RepairPal's defense and requirement that RepairPal use panel counsel without reserving any rights reasonably led RepairPal to believe that it would have full coverage for any adverse result. Indeed, had RepairPal known that Scottsdale was asserting it would never pay for any amounts advanced or indemnified to Shelton, RepairPal would have insisted on independent counsel and sought to resolve the dispute with Shelton. Shaw Decl., ¶¶ 8-9. Scottsdale failed to clearly put RepairPal on notice. "The whole purpose of such notice is to assure *actual*, not merely constructive, knowledge[.]" *Spray, Gould & Bowers v. Associated Intnl. Ins. Co.*, 71 Cal. App. 4th 1260, 1272 (1999); *see also Tomerlin*, 61 Cal. 2d at 577–79 (insurer authored "the ambiguity which…led the insured into reliance upon its promise of coverage; yet it could have quite simply clarified the situation by a direct communication to the insured…it must bear the loss.").

[12] The same goes for the other exclusions Scottsdale relies on—having unconditionally accepted RepairPal's defense without reserving rights, Scottsdale is precluded from raising such defenses.

**C. RepairPal Is Entitled to Damages for the Remaining Policy Limit and Pre-Judgment Interest.**

Scottsdale was required to provide coverage under both Insuring Clauses A.2 and A.3 for RepairPal's Loss in indemnifying Shelton pursuant to the Delaware court's Order. Scottsdale breached the Policy by failing to cover RepairPal's Loss. RepairPal's damages are measured by the amounts it was required to advance, and ultimately indemnified, pursuant to the Order. After negotiations facilitated by Scottsdale's own appointed counsel (Kennedys), RepairPal paid $6.4 million to Shelton as advanced and indemnified fees and costs pursuant to the Order (the "Indemnified Fees"). Eagle Decl. Ex. A (Shaw Depo. at 168:12–169:6); Shaw Decl. ¶ 13. Scottsdale knew RepairPal had paid the indemnity to Shelton and could not claw it back. Depo. Ex. 46 at 2968–2971. Shelton acknowledged payment in full and dismissed the Advancement Action. Request for Judicial Notice, Ex. M. RepairPal paid Indemnified Fees in excess of the Policy's $5 million limit.[13] Depo. Ex. 26, Declarations Item 3. RepairPal is entitled to coverage for its "Loss" up to the Policy's remaining limit, plus interest. See Cal. Civ. Code §§ 3287(a), 3289(b). The remaining limit is $4,761,402.47. Eagle Decl., Ex.F at Interrog. 20.

## V. <u>CONCLUSION</u>

Because the issue of Scottsdale's liability for breach of the duty to indemnify is established beyond genuine dispute, and RepairPal's damages are certain, RepairPal respectfully requests that the Motion be granted with respect to RepairPal's breach of contract claim and declaratory relief claim. For the same reasons, RepairPal requests that the Court deny Scottsdale's motion for summary judgment.

Dated: August 27, 2026

FARELLA BRAUN + MARTEL LLP

By: */s/ Tyler C. Gerking*
Tyler C. Gerking

Attorneys for Defendant and Counterclaimant
REPAIRPAL, INC.

---

[13] Even if RepairPal's damages were disputed, RepairPal would still be entitled to summary adjudication that Scottsdale breached its duty to indemnify RepairPal. FRCP 56(a) (Court may grant summary judgment "on all or part of" a claim, including on the issue of liability).