United States District Court
Northern District of California

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| SCOTTSDALE INSURANCE COMPANY,<br>Plaintiff,<br>v.<br>AUBREY JACKSON SHELTON, et al.,<br>Defendants. | Case No. 25-cv-05094-JST<br><br>**ORDER DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT; GRANTING DEFENDANT'S MOTION FOR PARTIAL SUMMARY JUDGMENT; DENYING PLAINTIFF'S MOTION FOR DE NOVO DETERMINATION**<br><br>Re: ECF Nos. 48, 52, 57 |

Before the Court are Plaintiff Scottsdale Insurance Company's and Defendant RepairPal, Inc.'s cross motions for summary judgment and Plaintiff Scottsdale Insurance Company's motion for de novo determination of the magistrate judge's recommendation. For the reasons set forth below, the Court denies Scottsdale's motion for summary judgment, ECF No. 48; grants RepairPal's motion for partial summary judgment, ECF No. 52; and denies Scottsdale's motion for de novo determination of dispositive matter referred to Magistrate Judge Robert M. Illman, ECF No. 57.

## I. BACKGROUND

### A. Factual Background

RepairPal purchased a Business and Management Indemnity Policy ("the policy") from Scottsdale for the period of March 1, 2023, through March 1, 2024, which included a Directors and Officers ("D&O") coverage section. ECF No. 48-3 at 178, 199. The D&O coverage section included three insuring clauses: (1) Insuring Clause A.1., which covered "the Loss of Directors and Officers for which the Directors and Officers are not indemnified by the Company and which the Directors and Officers have become legally obligated to pay by reason of a Claim first made

against the Directors and Officers"; (2) Insuring Clause A.2., which covered "the Loss of the Company for which the Company has indemnified the Directors and Officers and which the Directors and Officers have become legally obligated to pay by reason of a Claim first made against the Directors and Officers"; and Insuring Clause A.3., which covered "the Loss of the Company which the Company becomes legally obligated to pay by reason of a Claim first made against the Company." ECF No. 48-3 at 199. The policy provided coverage in the case of criminal indictment. *Id.* (defining "Claim" as including criminal proceedings).

Defendant Aubrey Jackson Shelton was insured under the policy as Vice President of Finance and Administration and an officer of RepairPal. ECF No. 53-1 at 9. On August 15, 2023, Shelton was indicted on twelve counts of bank fraud, wire fraud, and tax evasion for allegedly defrauding RepairPal of $2.7 million ("criminal action"). ECF No. 53-1 at 520. Shelton retained Paul Hastings, LLP to represent him. ECF No. 48-3 at 344. In September 2023, Paul Hastings tendered the criminal action to Scottsdale for coverage under the policy. ECF No. 48-3 at 322. When Scottsdale reached out to RepairPal for information, RepairPal informed Scottsdale that it was not indemnifying Shelton. ECF No. 48-3 at 319. On October 23, 2023, Scottsdale acknowledged its duty to defend Shelton in his criminal action and appointed attorney Theresa Kristovich of Kabat Chapman & Ozmer to defend Shelton. ECF 48-3 at 141. Shelton refused to use Kristovich and continued to use Paul Hastings to defend himself in the criminal action. ECF 38-3 ¶¶ 6–7.

On November 3, 2023, Paul Hastings sent a letter to RepairPal requesting that RepairPal indemnify Shelton pursuant to RepairPal's bylaws and a February 24, 2020 indemnification agreement between RepairPal and Shelton. ECF No. 48-3 a 344–45. RepairPal refused to indemnify Shelton. ECF No. 57 at 2.

On February 29, 2024, Shelton filed suit against RepairPal in the Delaware Court of Chancery for RepairPal to advance his defense costs pursuant to RepairPal's bylaws, an indemnification agreement between RepairPal and Shelton dated February 24, 2020, and Delaware law ("advancement action"). ECF No. 48-3 at 406; ECF No. 53-1 at 499. On March 1, 2024, RepairPal tendered its defense of the Delaware action to Scottsdale for coverage under the policy,

and Scottsdale appointed counsel for RepairPal's defense. ECF No. 48-3 at 263–65. Shelton prevailed, and on May 13, 2024, the Delaware court ordered RepairPal to advance Shelton's defense costs for all counts except for tax evasion. ECF No. 48-3 at 155–56; 472–74. Ultimately, Shelton obtained a mistrial and dismissal of the criminal action on or about May 23, 20265. ECF No. 53-1 at 462-64. Following a negotiation with Paul Hastings regarding Shelton's attorney's fees, ECF No. 53-1 at 466–67, RepairPal indemnified Shelton for approximately 6.4 million dollars, ECF No. 54 ¶ 13. Scottsdale did not object to RepairPal's agreement with Shelton's counsel regarding the amount of indemnification owed. ECF No. 53-1 at 466–69. Shelton dismissed the advancement action on December 17, 2025, after RepairPal had paid Shelton's attorney's fees and expenses.[1] ECF No. 55-1.

**B. Procedural Background**

On June 16, 2025, Scottsdale filed its complaint in this case for breach of contract and for a declaration that Scottsdale is not obligated to pay RepairPal or Shelton for any of Shelton's defense costs. ECF No. 1. RepairPal filed counterclaims against Scottsdale on September 20, 2025, for breach of contract and for a declaration that Scottsdale is obligated to pay for Shelton's defense costs. ECF No. 18.

Shelton did not file a response to Scottsdale's complaint despite being served by publication several times throughout December and January 2026 as well as being personally served by process server on April 27, 2026. ECF Nos. 34, 36. Scottsdale moved for entry of default on June 5, 2026, and the Clerk entered default as to Shelton on June 8, 2026. On June 16, 2026, Scottsdale filed a motion for default judgment as to Shelton, ECF No. 38, which the Court referred to Magistrate Judge Robert M. Illman for report and recommendation, ECF No. 42. Judge Illman recommended denying Scottsdale's motion without prejudice to re-filing, finding

[1] The Court grants RepairPal's request for judicial notice of the stipulation and order of dismissal in the advancement action, ECF No. 55, as well as Scottsdale's request for judicial notice of the transcript entitled "Oral Argument and Rulings of the Court on Cross-Motions for Summary Judgment" in the advancement action, ECF No. 48-1. Courts "may take notice of proceedings in other courts, both within and without the federal judicial system, if those proceedings have a direct relation to matters at issue." *U.S. ex rel. Robinson Rancheria Citizens Council v. Borneo, Inc.*, 971 F.2d 244, 248 (9th Cir. 1992) (citation omitted).

that a default judgment against Shelton would risk future inconsistent judgments until the case was resolved on the merits with respect to RepairPal. ECF No. 51. Scottsdale timely filed a motion for de novo determination of Judge Illman's report and recommendation, raising several objections. ECF No. 57.

On August 6, 2026, Scottsdale moved for summary judgment on all causes of action in its complaint and on RepairPal's counterclaims. ECF No. 48 at 7. On August 27, 2026, RepairPal moved for partial summary judgment on its breach of contract and declaratory relief counterclaims. ECF No. 52.

## II. JURISDICTION

The Court has jurisdiction under 28 U.S.C. § 1332(a)(1).

## III. LEGAL STANDARDS

### A. Motion for Summary Judgment

Summary judgment is proper when a "movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "A party asserting that a fact cannot be or is genuinely disputed must support the assertion by citing to particular parts of materials in the record, including depositions, documents, . . . affidavits or declarations, stipulations (including those made for purposes of the motion only), . . . or other materials." Fed. R. Civ. P. 56(c)(1)–(c)(1)(A). A party also may show that such materials "do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact." Fed. R. Civ. P. 56(c)(1)(B).

A dispute is genuine only if there is sufficient evidence for a reasonable trier of fact to resolve the issue in the nonmovant's favor, and a fact is material only if it might affect the outcome of the case. *Fresno Motors, LLC v. Mercedes Benz USA, LLC*, 771 F.3d 1119, 1125 (9th Cir. 2014) (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248–49 (1986)). "In considering a motion for summary judgment, the court may not weigh the evidence or make credibility determinations, and is required to draw all inferences in a light most favorable to the non-moving party." *Freeman v. Arpaio*, 125 F.3d 732, 735 (9th Cir. 1997). When cross-motions for summary judgment are filed, each motion is evaluated separately under this standard. *See Comcast of*



United States District Court
Northern District of California

*Sacramento I, LLC v. Sacramento Metro. Cable Television Comm'n*, 923 F.3d 1163, 1168 (9th Cir. 2019).

**B. Motion for De Novo Review**

When a magistrate judge enters a recommended disposition on pretrial matters that are dispositive of a claim or defense, a party may file written objections to the proposed findings and recommendations. Fed. R. Civ. P. 72(b). A de novo review requires the Court to "consider the matter anew, as if no decision had been rendered below," and reach its own conclusions regarding the portions of the Magistrate Judge's findings and recommendations to which objections were made. *United States v. Silverman*, 861 F.2d 571, 576 (9th Cir. 1988). A district court "may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge." 28 U.S.C. § 636(b)(1)(C).

**IV. DISCUSSION**

**A. Motion for Summary Judgment**

Scottsdale and RepairPal's cross motions for summary judgment turn on the parties' competing interpretations of the policy's language. As such, the Court begins with a discussion of the general principles governing the interpretation of insurance policies.

"Interpretation of an insurance policy is a question of law and follows the general rules of contract interpretation." *MacKinnon v. Truck Ins. Exch.*, 31 Cal. 4th 635, 647 (2003). Thus, "the mutual intention of the parties at the time the contract is formed governs interpretation," and this intention is inferred, if possible, "solely from the written provisions of the insurance policy." *Palmer v. Truck Ins. Exch.*, 21 Cal. 4th 1109, 1115 (1999). If the policy's written language "is clear and explicit, it governs." *Bank of the West v. Superior Court*, 2 Cal.4th 1254, 1264 (1992). The policy's language must be interpreted in the "ordinary and popular sense, unless used by the parties in a technical sense or a special meaning is given to them by usage." *Id.*

"A policy provision is ambiguous when it is susceptible to two or more reasonable constructions" within the context of the policy as a whole and in the circumstances of the case. *E.M.M.I. Inc. v. Zurich Am. Ins. Co.*, 32 Cal. 4th 465, 470 (2004). "The court may then 'invoke the principle that ambiguities are generally construed against the party who caused the uncertainty

to exist (i.e., the insurer) in order to protect the insured's reasonable expectation of coverage.'" *Palmer*, 21 Cal. 4th at 1115 (quoting *La Jolla Beach & Tennis Club, Inc. v. Indus. Indem. Co.*, 9 Cal. 4th 27, 37 (1994)).

The insured has the initial burden to establish that "the occurrence forming the basis of its claim is within the basic scope of insurance coverage." *Aydin Corp. v. First State Ins. Co.*, 18 Cal. 4th 1183, 1188 (1998), *as modified on denial of reh'g* (Oct. 14, 1998). "Insurance coverage is interpreted broadly so as to afford the greatest possible protection to the insured." *MacKinnon v. Truck Ins. Exch.*, 31 Cal. 4th 635, 648 (2003) (citation modified).

Once an insured has shown that its claim is "within the basic scope of insurance coverage," "the burden is on the insurer to prove the claim is specifically excluded." *Aydin*, 18 Cal. 4th at 1188. "Exclusionary clauses are interpreted narrowly against the insurer" and must be "conspicuous, plain, and clear." *MacKinnon*, 31 Cal. 4th at 648 (citation modified). If the insurer carries its burden to show that an exclusion applies, then the insured bears the burden of proving that an exception affords coverage. *Aydin*, 18 Cal. 4th at 1218. "As a coverage provision, an exception to an exclusion will be construed broadly in favor of the insured." *TRB Invs., Inc. v. Fireman's Fund Ins. Co.*, 40 Cal. 4th 19, 27 (2006).

### 1. Coverage

Because RepairPal bears the initial burden of establishing coverage, *Aydin*, 18 Cal. 4th at 1188, the Court begins with the relevant coverage language of the policy. RepairPal argues that its claim is covered by Insuring Clause A.2. of the policy, which provides the following coverage.

> The Insurer shall pay the Loss of the Company for which the Company has indemnified the Directors and Officers and which the Directors and Officers have become legally obligated to pay by reason of a Claim first made against the Directors and Officers during the Policy Period or, if elected, the Extended Period, and reported to the Insurer pursuant to Section E.1. herein, for any wrongful Act taking place prior to the end of the Policy Period.

ECF No. 48-3 at 199.

Insuring Clause A.2. is broadened by Endorsement 28 Section D, which provides the following coverage.

> "Insuring Clause A.2. . . . shall apply to Loss resulting from any

> Claim if indemnification by the Company for such Claim is required or permitted by applicable law, to the fullest extent so required or permitted, regardless of whether or not such actual indemnification by the Company is made, except and to the extent such indemnification is not made by the Company solely by reason of a Financial Impairment Situation."

*Id.* at 237. An endorsement is an integral part of an insurance policy, and "can expand or restrict the coverage otherwise provided by the policy. If there is any conflict between an endorsement and the body of a policy, the endorsement controls . . . ." *Frontier Oil Corp. v. RLI Ins. Co.*, 153 Cal. App. 4th 1436, 1463, 63 Cal. Rptr. 3d 816, 838 (2007), *as modified* (Sept. 5, 2007).

The policy's written language is "clear and explicit" that Scottsdale agreed to pay for RepairPal's loss whenever RepairPal indemnifies its directors and officers. *Bank of the West*, 2 Cal. 4th at 1264. Indeed, pursuant to Endorsement No. 28, Insuring Clause A.2. covers RepairPal's indemnification of its directors and officers "to the fullest extent so required or permitted" by applicable law, "regardless of whether or not such actual indemnification by [RepairPal] is made." ECF No. 48-3 at 237. Because RepairPal was required or permitted to indemnify Shelton, RepairPal's claim for its indemnification of Shelton is "within the basic scope of insurance coverage" provided by Insuring Clause A.2. as broadened by Endorsement 28. *Aydin*, 18 Cal. 4th at 1188.

Scottsdale contends that because RepairPal was ordered to pay Shelton's defense costs in the advancement action, Insuring Clause A.3. applies, and therefore, Insuring Clause A.2. does not apply. ECF No. 59 at 5–6. No provision of the policy indicates that only one insuring clause may apply to a claim. To the contrary, the policy expressly provides that "two or more Insuring Clauses" may cover the same claim. ECF No. 48-3 at 254 (discussing applicable retention or deductible amounts "[i]n the event that any Claim . . . shall be covered, in whole or in part, under two or more Insuring Clauses or more than one Coverage Section"). Thus, even if Scottsdale is correct that Insuring Clause A.3. applies to RepairPal's claim, that does not prevent Insuring Clause A.2. from applying as well.

**2. Exclusion**

With RepairPal having established that Insuring Clause A.2. covers its claim, the burden shifts to Scottsdale "to prove the claim is specifically excluded." *Aydin*, 18 Cal. 4th at 1188.

United States District Court
Northern District of California

Scottsdale argues that two policy provisions exclude RepairPal's claim from coverage: (1) the "Insured v. Insured Exclusion," and (2) the no voluntary payments provision. ECF No. 48 at 14–23, 28–29. The Court addresses each in turn and finds that neither excludes RepairPal's claim.

**a. Insured v. Insured Exclusion**

The Insured v. Insured Exclusion provides that:

> Insurer shall not be liable for Loss under this Coverage Section on account of any Claim: . . . brought or maintained by, on behalf of, in the right of, or at the direction of any Insured in any capacity, any Outside Entity or any person or entity that is an owner of or joint venture participant in any Subsidiary in any respect and whether or not collusive, unless such claim: . . . is brought or maintained by an Insured in the form of a cross-claim, third-party claim or other proceeding for contribution or indemnity which is part of, and directly results from a Claim that is covered by this Coverage Section . . . ."

ECF No. 48-3 at 201–02. The parties agree that both Shelton and RepairPal are "Insureds" under the policy. Thus, Scottsdale has shown that the Insured v. Insured Exclusion applies to the advancement action as a lawsuit brought by one insured against another. However, Scottsdale has *not* shown that RepairPal's indemnification of Shelton's defense costs was on account of the advancement action rather than Shelton's criminal proceedings.

"The statutory authorization for interim advancement of litigation expenses is distinct from the right to receive final indemnification under Section 145(a) and (b) of the DGCL." *Kaung v. Cole Nat. Corp.*, 884 A.2d 500, 509 (Del. 2005); *see id.* at 509-510 (explaining that the right to advancement is "discrete and independent" of the right to indemnification). As such, an advancement action only determines a corporation's advancement obligations, not its ultimate indemnification obligations, because "[w]hether a corporate officer has a right to indemnification is a decision that must necessarily await the outcome of the investigation or litigation." *See id.*

RepairPal was ordered to *advance* Shelton's defense costs on account of the advancement action. ECF No. 48-3 at 472–74. But RepairPal would have been required—or at least permitted—to *indemnify* Shelton regardless of whether RepairPal advanced Shelton's litigation expenses. 8 Del. C. Ann. tit. 8, § 145(c)(1) (West); *Kuang*, 884 A.2d at 509. And Insurance Clause A.2. covers to RepairPal's indemnification of its directors and officers to "the fullest extent so required or permitted" by applicable law. ECF No. 48-3 at 237. Thus, because RepairPal's

indemnification obligation arose from and depended on the outcome of the criminal action against Shelton rather than the advancement action, the Insured v. Insured Exclusion does not exclude RepairPal's claim from coverage under Insuring Clause A.2.

**b. No Voluntary Payments Provision**

The no voluntary payments provision states that:

> The Insureds agree not to settle or offer to settle any Claim, incur any Costs, Charges and Expenses or otherwise assume any contractual obligation or admit any liability with respect to any Claim without the prior written consent of the Insurer, such consent not to be unreasonably withheld. The Insurer shall not be liable for any settlement, Costs, Charges and Expenses, assumed obligation or admission to which it has not consented.

ECF No. 48-3 at 197. Because the no voluntary payments provision "functions to defeat the insured's claim," Scottsdale bears the burden of proving that RepairPal's claim is excluded by the no voluntary payments provision. *See Dart Indus., Inc. v. Com. Union Ins. Co.*, 28 Cal. 4th 1059, 1071–72 (2002).

Under the no voluntary payments provision, each insured agrees not to incur costs or assume obligations with respect to a claim without Scottsdale's consent. Narrowly construed against Scottsdale, the no voluntary payments provision can be reasonably interpreted as eliminating coverage only for costs incurred or obligations assumed without Scottsdale's consent and only for the insureds that incurred those costs or assumed those obligations. *Mariscal v. Old Republic Life Ins. Co.,* 42 Cal. App. 4th 1617, 1623 (1996) (recognizing that "exclusions are strictly interpreted against the insurer").

This interpretation is supported by the policy language as a whole. *Aydin*, 18 Cal. 4th at 1191 ("[P]rovisions of an insurance policy, like the provisions of any other contract, must be construed in the context of the policy as a whole."). The policy distinguishes the "Company" from "Insured Persons," including "Directors and Officers." ECF No. 48-3 at 192–92, 200. Accordingly, Insuring Clauses A.2. and A.3. cover a "Loss of the Company" while Insuring Clause A.1. covers a "Loss of the Directors and Officers." ECF No. 48-3 at 199. Because the policy's written language covers RepairPal's loss separately from losses of its directors and officers, the reasonable interpretation is that RepairPal and its directors and officers are covered



United States District Court
Northern District of California

separately and independently of each other. Thus, the no voluntary payments provision bars recovery only for the insured that violates the no voluntary payments provision.

Scottsdale contends that a violation by a director or officer eliminates coverage not only for the director or officer under Insuring Clause A.1., but also for RepairPal under Insuring Clause A.2., regardless of RepairPal's compliance with the provision. Scotts explains that this is because the no voluntary payments provision applies to all insureds and all insuring clauses. However, Scottsdale does not point to any provision in the the policy indicating that RepairPal's coverage under Insuring Clause A.2. is dependent on its' directors' and officers' coverage under Insuring Clause A.1.

Even if the no voluntary payments provision could reasonably be read as Scottsdale proposes, the no voluntary payments provision is, at best, ambiguous rather than clearly and explicitly excluding RepairPal's claim. Under California law, it is the court's duty to resolve any ambiguity "against the party who caused the uncertainty to exist (i.e., the insurer) in order to protect the insured's reasonable expectation of coverage." *Palmer v. Truck Ins. Exch.*, 21 Cal. 4th 1109, 1115 (1999). RepairPal would reasonably expect coverage for its required or permitted indemnification of its directors and officers based on the broad coverage language of Insuring Clause A.2. and Endorsement 28, on the theory that its indemnification of Shelton was "required . . . by applicable law." Reading the no voluntary payments provision in light of the policy's coverage language, the Court concludes that a reasonable insured would not expect the coverage provided under Insuring Clause A.2. and Endorsement 28 to disappear based on a provision that it did not violate.

Scottsdale argues that this interpretation reads the no voluntary payments provision out of the contract any time a company voluntarily agrees to indemnify a director or officer under Insuring Clause A.2. ECF No. 59 at 8. Not so. The Court need not and does not address whether a company's permissible indemnification of its directors and officers when *not* required violates the no voluntary payments provision if made without Scottsdale's consent. Here, RepairPal was legally *required* to indemnify Shelton, and so did not voluntarily assume an obligation to indemnify Shelton without Scottsdale's consent. *See* ECF No. 48-3 at 472–74, 155–62; 8 Del.



United States District Court
Northern District of California

United States District Court
Northern District of California

Gen. Corp. Law. § 145(c)(1).[2]

Scottsdale sold RepairPal an insurance contract covering RepairPal's required or permitted indemnification of its directors and officers. If Scottsdale intended to exclude RepairPal's indemnification obligations from coverage under Insuring Clause A.2. whenever the indemnified director or officer violated the no voluntary payments provision, then "its duty was to state and define such exclusion in a conspicuous, plain and clear manner." *Pepper Indus., Inc. v. Homme Ins. Co.*, 67 Cal. App. 3d 1012, 1019 (Ct. App. 1977).

In conclusion, the no voluntary payments provision does not plainly and clearly exclude RepairPal's indemnification claim from coverage, and Insuring Clause A.2. covers RepairPal's indemnification of Shelton's defense costs.[3] Accordingly, the Court grants RepairPal's motion for partial summary judgment, and denies Scottsdale's motion for summary judgment on Scottsdale's claims against RepairPal.

**3. Bad Faith**

Scottsdale moves for summary judgment on RepairPal's counterclaim that Scottsdale breached the implied covenant of good faith. ECF No. 48 at 30–31. "The key to a bad faith claim is whether or not the insurer's denial of coverage was reasonable," and "the reasonableness of an insurer's claims-handling conduct is ordinarily a question of fact." *Amadeo v. Principal Mut. Life Ins. Co.*, 290 F.3d 1152, 1161 (9th Cir. 2002) (citation modified).

Scottsdale's argument for summary judgment on RepairPal's bad faith claim is premised on the Court finding that Scottsdale did not breach the policy and so no benefits were due. ECF No. 48 at 31. However, as just set forth, the Court finds that Scottsdale breached the policy when

---

[2] Scottsdale argues that RepairPal's indemnification was voluntary because it was based on a voluntarily entered indemnification agreement. ECF No. 48 at 27–28. But indemnification rights are rights conferred by contract. *See Stifel Fin. Corp. v. Cochran*, 809 A.2d 555, 559 (Del. 2002) ("[I]ndemnification is a right conferred by contract, under statutory auspice . . . ."). As such, interpreting the no voluntary payments provision to exclude any obligations assumed pursuant to a contract would exclude indemnification obligations. Such an interpretation would be unduly broad and contrary to the reasonable expectations of the insured that indemnification obligations be covered under Insuring Clause A.2. and Endorsement 28. *MacKinnon*, 31 Cal. 4th at 648.

[3] Because RepairPal's indemnification of Shelton's defense costs is covered by Insuring Clause A.2., the Court need not address the parties' arguments regarding whether Insuring Clause A.3. also covers the indemnification.

United States District Court
Northern District of California

it did not pay for RepairPal's claim. There are material disputes of fact exist as to whether Scottsdale's denial of coverage was reasonable. *Amadeo*, 290 F.3d at 1161. Accordingly, the Court denies Scottsdale's motion for summary judgment as to RepairPal's counterclaims against Scottsdale.

**B. Motion for Default Judgment**

Scottsdale objects to Judge Illman's recommendation to deny Scottsdale's motion for default without prejudice to re-filing once the instant case is concluded on the merits as to RepairPal. ECF No. 57. Scottsdale argues that Judge Illman erred by determining that entry of default judgment against Shelton would create the potential for an "unfair and incongruous judgment" because RepairPal and Shelton are "similarly situated" and by not evaluating the *Eitel* factors.[4] *Id*. The Court reviews the matter de novo and adopts Judge Illman's report and recommendation in full.

Even when a party's conduct warrants a default judgment sanction, the court may delay the entry of default judgment where judgment against the defaulting party would create a future risk of logically inconsistent judgments. Under Federal Rule of Civil Procedure 54(b), "the court may direct entry of a final judgment as to one or more, but fewer than all, claims or parties only if the court expressly determines that there is no just reason for the delay." Fed. R. Civ. P. 54(b). "There is just reason to delay the entry of default judgment when there are multiple defendants—only some of whom have defaulted—and the court has not yet adjudicated the claims as to the non-defaulting defendants." *Shenzhenshi Haitiecheng Sci. & Tech. Co. v. Rearden LLC*, No. 15-CV-00797-JST, 2016 WL 5930289, at *11 (N.D. Cal. Oct. 11, 2016).

The primary purpose of the rule against entering default judgment against a defaulting

[4] Scottsdale also argues that Judge Illman did not address "the effect of Shelton's default." ECF 57 at 3. Specifically, Scottsdale argues that admitted facts regarding Shelton's conduct establish that Shelton breached the policy's "no voluntary payments" provision. *Id.* "However, a [defaulting] 'defendant is not held . . . to admit conclusions of law.'" *DIRECTV, Inc. v. Hoa Huynh*, 503 F.3d 847, 854 (9th Cir. 2007) (quoting *Nishimatsu Constr. Co. v. Houston Nat'l Bank,* 515 F.2d 1200, 1206 (5th Cir.1975)). "Where the facts are not in dispute," the question of whether those facts constitute a breach of contract "is one of law." *Quality Wash Grp. V, Ltd. v. Hallak*, 50 Cal. App. 4th 1687, 1694 (1996). Therefore, even if Shelton has admitted facts regarding his conduct, Shelton is not held to admit that he breached the policy as a matter of law.

party when a non-defaulting party is "similarly situated" is to avoid logically inconsistent judgments. *In re First T.D. & Inv., Inc.*, 253 F.3d 520, 532–33; *see Frow v. De La Vega*, 82 U.S. 552, 554 (1872) (explaining that "a final decree on the merits against the defaulting defendant alone, pending the continuance of the cause, would be incongruous" because it could result in "one decree of the court sustaining the charge of joint fraud committed by the defendants" and "another decree disaffirming the said charge"). Where judgment against one defendant would be inconsistent with the legal theories or defenses advanced by non-defaulting defendants, the "proper procedure" is to "wait[] until completion of trial against the non-defaulting defendants before fixing damages and entering default judgments against [the defaulting defendant]" so that the judgment against the defaulting defendant is "fully consistent" with the judgment against the non-defaulting defendant. *Garamendi v. Henin*, 683 F.3d 1069, 1082–83 (9th Cir. 2012).

There is a future risk that judgment on RepairPal's counterclaim for breach of the implied covenant of good faith would be inconsistent with the declaratory relief that Scottsdale seeks against Shelton. RepairPal claims that Scottsdale breached the implied covenant of good faith by, inter alia, "refusing to provide independent counsel for Shelton," "failing and refusing to defend Shelton or pay Shelton's defense costs," and "erroneously contending that there is no coverage for REPAIRPAL . . . based on independent acts or omissions of Shelton." ECF No. 18 at 18. Scottsdale's requested relief, a declaration that Shelton breached the policy, would create a future risk of conflict with RepairPal's remaining counterclaim.

Accordingly, the Court denies Scottsdale's motion for default without prejudice to Scottsdale re-filing the motion once this action is concluded on the merits as to RepairPal.

**CONCLUSION**

For the foregoing reasons, the Court denies Scottsdale's motion for summary judgment and grants RepairPal's partial motion for summary judgment.

Having reviewed the matter de novo, the Court adopts Judge Illman's report and recommendation and denies Scottsdale's motion for default judgment. The Court will consider a motion for default judgment against Shelton when this case is concluded as to RepairPal.

The Court hereby sets a Case Management Conference on November 24, 2026 at 2:00 p.m.

An updated case management statement is due November 17, 2026.

**IT IS SO ORDERED.**

Dated: October 27, 2026

JON S. TIGAR
United States District Judge